LIRA, APPELLEE, *v.* LIRA, APPELLANT.

(No. 40788—Decided April 17, 1980.)

*Mr. Sheldon E. Rabb,* for appellee.
*Mr. John F. Seelie* and *Ms. Jane T. Seelie,* for appellant.

SILBERT, J.  This is an appeal from a judgment of the Court of Common Pleas of Cuyahoga County, Domestic Relations Division. Linda V. Lira, defendant-appellant, appeals from the court's order divorcing her from Robert Lira, Jr., plaintiff-appellee, awarding her custody of their minor son, and ordering appellee to pay alimony and child support.

Appellee filed his complaint for divorce on May 31, 1977, asserting that appellant had been guilty of gross neglect of duty. Appellant filed an answer and counterclaim on June 9, 1977, seeking alimony only, custody, and child support. During the trial, which was held in April 1978, the court permitted her to amend her counterclaim to request divorce.

The evidence at the trial established that the parties were married in San Antonio, Texas, on May 24, 1969. At the time of the marriage, appellant was employed as a teacher and appellee, as a pharmacist. Appellant continued to work full time

until the birth of their son on May 23, 1971, and took post-graduate courses in education after the marriage.

In the fall of 1971, appellee quit his full-time job and began attending medical school in Guadalajara, Mexico. To finance appellee's education, the parties sold two properties which they had purchased with "pooled" funds. Appellant accompanied appellee to Mexico. Unable to find work, however, she returned to San Antonio and resumed a full-time teaching position, earning approximately $8,000 per year. She retained her teaching position until May 1976.

Through 1975, appellee earned several thousand dollars per year working as a pharmacist during summer vacations. After his graduation in June 1975, he spent one year at Rutgers University completing a mandatory program for foreign-educated medical students. He began his internship at Huron Road Hospital in June 1976, and, his two-year residency at Cleveland Clinic in June 1977. At the time of the trial, he was earning approximately $17,000 per year.

Appellant joined appellee in Cleveland in June 1976. They separated in February 1977, and appellant returned to San Antonio several months later. At the time of the trial, she was employed as a substitute teacher in San Antonio.

At the trial, appellant contended that appellee's medical license was an asset of the marriage. In support of her claim for a share therein, she introduced expert testimony that its present value was $863,702.[1]

On October 12, 1978, the court filed findings of fact. On April 4, 1979, the court filed its journal entry. The journal entry awarded appellant a divorce, awarded her custody of the minor son, and ordered appellee to pay her $250 per month as alimony until further order, $50 per week as child support, $7,500 for attorney's fees, $1,029.80 for costs advanced, and $1,200 to reimburse her parents for child support they had furnished after the separation; it also ordered appellee to pay the marital debts of $17,900.

---

[1] Using statistics provided by the Department of Labor, Department of Health, Education and Welfare, American Medical Association, and Medical Economics Corporation, the expert projected appellee's future earnings as an internist, subtracted the income appellee would have earned as a pharmacist, and discounted the difference by 6 percent. From that figure, he deducted appellee's "costs", *i.e.,* his education expenses.

On appeal, appellant assigns seven errors:

"First: The Trial Court erred and committed an abuse of discretion in only awarding the appellant-wife periodic support alimony terminable upon death or remarriage.

"Second: The Trial Court erred and committed an abuse of discretion in its failure to find that appellee's education and license to practice medicine, acquired during coverture, is in the nature of a franchise and constitutes marital property subject to division—most especially when the husband's education and license to practice medicine were the result of years of joint effort and sacrifice by the wife.

"Third: The Trial Court committed an abuse of discretion and erred in its failure to identify marital property, failure to place a value on the identified marital property, and failure to effect a division of the identified marital property as valued.

"Fourth: The Trial Court erred and committed an abuse of discretion in its failure to consider all of the factors required by Revised Code 3105.18 and by failing to make a reasonable and equitable alimony award to the wife.

"Fifth: The Trial Court committed an abuse of discretion and erred in its failure to recognize and give consideration to the appellant's contribution to the marital asset generated throughout the marriage—the asset being the common objective of the marriage to wit: the husband's advance education and license to practice medicine.

"Sixth: The Trial Court erred and committed an abuse of discretion by failing to recognize the parties' contractual obligations regarding the acquisition of the medical education and license to practice medicine.

"Seventh: The Trial Court erred and committed an abuse of discretion in its failure to recognize and apply equitable common law principles to the facts and grant appropriate relief to the wife."

These assignments, directed toward the trial court's failure to consider appellee's medical license an asset of the marriage and to award appellant substantial permanent alimony as her share therein, are without merit.

R. C. 3105.18 provides:

"(A) In a divorce, dissolution of marriage, or alimony proceedings, the court of common pleas may allow alimony as it deems reasonable to either party.

"The alimony may be allowed in real or personal property, or both, or by decreeing a sum of money, payable either in gross or by installments, as the court deems equitable.

"(B) In determining whether alimony is necessary, and in determining the nature, amount, and manner of payment of alimony, the court shall consider all relevant factors, including:

"(1) The relative earning abilities of the parties;

"(2) The ages, and the physical and emotional conditions of the parties;

"(3) The retirement benefits of the parties;

"(4) The expectancies and inheritances of the parties;

"(5) The duration of the marriage;

"(6) The extent to which it would be inappropriate for a party, because he will be custodian of a minor child of the marriage, to seek employment outside the home;

"(7) The standard of living of the parties established during the marriage;

"(8) The relative extent of education of the parties;

"(9) The relative assets and liabilities of the parties;

"(10) The property brought to the marriage by either party;

"(11) The contribution of a spouse as homemaker.

"(C) In an action brought solely for an order for alimony under section 3105.17 of the Revised Code, any continuing order for periodic payments of money entered pursuant to this section is subject to further order of the court upon changed circumstances of either party."

It is well settled that an award of alimony is within the sound discretion of the trial court and that, absent an abuse of discretion, a reviewing court may not reverse. *Wolfe* v. *Wolfe* (1976), 46 Ohio St. 2d 399; *Dennison* v. *Dennison* (1956), 165 Ohio St. 146; *Swanson* v. *Swanson* (1976), 48 Ohio App. 2d 85.

Appellant relies heavily on *Daniels* v. *Daniels* (1961), 90 Ohio Law Abs. 161, for the proposition that a medical license is an asset. While the *Daniels* court did hold that a medical license is an asset, it did not hold that a medical license itself is subject to precise division; rather, it held that a medical license is one element to be considered in the award of alimony, pursuant to R. C. 3105.18(B)(4).[2] We agree. We rule that, since a

---

[2] The *Daniels* court stated that "[i]n our opinion, the right to practice medicine, being in the nature of a franchise, constitutes property which the trial court *had a right to consider* in making the award of alimony.***" (Emphasis added.) *Id.,* at 164.

medical license cannot be assigned, sold, transferred, pledged, or devised, and since appellee had not yet, at the time of the trial, formulated any substantive plans for his future employment, the trial court did not err in finding that "plaintiff's medical Degree is not subject to division, but is rather one factor to be considered in arriving at an equitable division."

We agree with the *Daniels* court, moreover, in recognizing that a medical license may also be significant if it is property which was brought to the marriage by the non-licensed spouse[3] and that its greatest significance may be its effect on the relative earning abilities of the parties.[4]

The record indicates that, while both parties in the instant case sacrificed and presumably endured a lower standard of living than they would have had, had appellee not attended medical school, most of his education was funded by loans.[5] It indicates, by implication, that most of appellant's earnings went toward support.[6] The record, moreover, indicates that a substantial portion of appellee's educational loans remains outstanding and that he remains liable therefor. It contains no

---

[3] R. C. 3105.18(B)(10). In *Daniels,* the defendant-husband's medical education had been financed by voluntary contributions from his wife's father; the contributions had been made "***to relieve the defendant of his primary obligation of support and to permit him to pursue his education***." *Id.,* at page 164. The medical education, in other words, was actually property brought to the marriage by the plaintiff-wife.

[4] R. C. 3105.18(B)(1). The *Daniels* court stated that "***to conclude that the money***[furnished by the defendant's father-in-law], *as now transposed into earning power,* came to the parties other than 'by their marriage' would be somewhat unrealistic.***" (Emphasis added.) *Id.,* at 164. The court later noted that:

"***[T]he defendant's only financial asset is a medical degree which should, under normal circumstances, carry with it a high potential earning power. Since the defendant has a present right to practice medicine, the amount of $300.00 per month which he presently earns in residency is not fairly indicative of his 'earning capacity' as that term is used in Section 3105.18, Revised Code." *Id.,* at 166.

For additional authority that the greatest significance of the medical license is its effect on the relative earning abilities, see, by the same court, *West* v. *West* (Montgomery Co. Ct. of Appeals No. 5830, June 23, 1978), unreported.

[5] See *Wolfe* v. *Wolfe, supra,* at 412, noting that the trial court's principal function in awarding alimony is to divide the marital assets equitably and emphasizing that the function is premised upon " '***the right of the wife to participate in the accumulations which are presumably the result of their joint efforts and joint economies***.' "

[6] See R. C. 3103.01 and 3103.03. Compare the fact situation in the instant case with that in *Daniels,* in which the minor daughter of the marriage had been born "***with a congenital heart defect necessitating more demanding care and surveillance than a normal child.***" *Id.,* at 163.

evidence that appellant has contributed to repayment thereof. In light of the facts that appellant is qualified to work at a full-time teaching job, that her hours of employment are particularly appropriate for rearing a minor of school age, that appellee has substantial financial obligations facing him in the immediate future, and that he is not yet earning a substantial salary, the trial court did not err in finding that:

"Plaintiff [is] to pay to the defendant as and for alimony the sum of $250.00 per month until further order of Court. *The Court\*\*\*[is] aware that the plaintiff's income will increase greatly over the working life of the plaintiff and should be reviewed periodically by this Court.* This alimony is to terminate upon the death or remarriage of the defendant." (Emphasis added.)

The record, in other words, indicates that the trial court considered each element enumerated in R. C. 3105.18 in awarding alimony and in fashioning its journal entry. Accordingly, we overrule the first, second, third, fourth, fifth, and seventh assignments of error.

Appellant testified that appellee's medical degree was "what he had wanted and what I had wanted for him." The record, in other words, contains no evidence that appellant's return to work was other than voluntary. It contains no evidence of an express or implied bargain whereby she agreed to forego temporarily a domestic life in exchange for an improved standard of living in the future. Accordingly, we overrule the sixth assignment of error.

The judgment of the Court of Common Pleas is affirmed.

*Judgment affirmed.*

KRENZLER, C. J., and JACKSON, J., concur.

SILBERT, J., retired, of the Eighth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.