Judith M. LEVECK, Appellant,

v.

Terrence W. LEVECK, Appellee.

Terrence W. LEVECK, Cross-Appellant,

v.

Judith M. LEVECK, Cross-Appellee.

Court of Appeals of Kentucky.

April 10, 1981.

Donald E. Skeeters, Radcliff, for appellant/cross-appellee.

John McCrea, Louisville, for appellee/cross-appellant.

Before HAYES, C. J., and LESTER and McDONALD, JJ.

HAYES, Chief Judge.

This is an appeal from those portions of the decree of dissolution of the marriage of Terrence W. Leveck and Judith M. Leveck that distributed the marital property, awarded support for the children, and provided maintenance to Judith. Terrence cross-appeals on the grounds that the trial court erred in finding that Judith was unable to work, in limiting the children's visitation in his home to one (1) month per year, and in awarding lump sum as well as periodic maintenance to Judith.

Judith and Terrence married in December, 1967, and separated in December, 1978. The final judgment concerning the property was entered on July 18, 1980. Two (2) children were born of the marriage: Christopher, born July 10, 1972 and Jonathan, born October 28, 1976.

At the time of their marriage, neither party owned any significant property. Judith was working as a psychiatric nurse at Fort Leaven Mental Health Center and Terrence was completing his undergraduate education at Johns Hopkins University in Baltimore, Maryland. Terrence was graduated in January, 1968 and was employed until he started medical school at the University of Colorado in September, 1968. Judith, a registered nurse, was apparently three (3) years away from a college degree. During the first three years of Terrence's medical education, Judith was employed as a nurse at the Fort Logan Medical Health Center, Denver, Colorado. She quit working outside the home in June, 1971, when Terrence began his final year of medical school and started receiving Second Lieutenant's pay from the Army Senior Medical Program.

It appears that Judith furnished most of the funds needed to support the couple from the start of their marriage in December 1967, until Terrence's completion of his third year of medical school in June, 1971. Judith testified that during the time she was working, she paid the couple's living expenses, Terrence's medical school tuition, and the majority of the costs for Terrence's books and lab fees. Terrence testified that tuition for his first year of medical school was $1,134.00 and $1,284.00 apiece for his second and third years. Judith's gross income was $7,008.00 in 1968; $5,786.53 in 1969; $7,456.52 in 1970; and $2,603.55 in 1971. The first year of medical school (1968–69) Terrence earned $1,560.00 and the second year (1969–70) $905.00. For the entire year of 1971, Terrence earned $3,393.00 —about one-third of that amount was earned during the last half of his third year through employment at the Fitzsimmons Army Hospital and two-thirds was obtained from the Army Senior Medical Program during the first half of his fourth year of school.

In 1972, Terrence earned $10,150.00 including Army Senior Medical Program funds during the first half of 1972 and a salary as a medical intern during the last half of 1972. He did both his medical internship and residency in the Army. In April of 1979, Terrence was a major in the Army and a board-certified specialist in general surgery. In May of 1979, Terrence testified that he received a $12,000 bonus plus his monthly take-home pay of $1,602.00 (housing allowance already subtracted). Terrence's gross income in 1978 was $34,437.62; $29,720.00 in 1977; $28,776.00 in 1976; and $18,541.00 in 1975.

On December 29, 1978, Judith filed a petition for dissolution of the marriage. Temporary orders were entered by the court on February 13, 1979 and June 26, 1979. The June 26th order provided Judith with $1,200.00 per month support and maintenance. On August 22, 1979, the Hardin Circuit Court entered an order which dissolved the marriage of the parties and reserved matters in dispute for subsequent resolution. Each party took proof, and the final judgment was entered on July 18, 1980. The final judgment gave Judith the permanent custody of Jonathan and the temporary custody of Christopher. There is nothing in the record to indicate which party received the permanent custody of Christopher. Judith appealed the judgment and Terrence cross-appealed.

■ Judith's main contention on appeal is that the trial court erred when it did not specifically find that Terrence's medical license was marital property subject to division. Judith, citing *Inman v. Inman*, Ky. App., 578 S.W.2d 266 (1979) argues that the principle has been established in Kentucky that a professional license and degree is marital property. This is an attempt to broaden the holding of *Inman*. In *Inman*, the only way by which equity could have been achieved was by the classification of the license as marital property. There was no marital property other than the license and Mrs. Inman was not eligible for maintenance. Mrs. Inman would have been left with nothing had the license not been considered marital property.

In the present case, Judith worked for three and one-half years, supporting her husband and paying his tuition. She then stopped working outside the home. For the next seven and one-half years, the family lived on Terrence's army salary. Judith and Terrence acquired a small marital estate which included no real estate. In the final judgment, Judith was awarded both a lump sum of $10,000 and periodic maintenance. The trial court stated that the lump sum award included compensation for her investment in Terrence's medical education. In this case, an equitable result was able to be reached without treatment of the license as marital property, because Judith was entitled to maintenance. The trial court was not clearly erroneous in failing to find the medical license as marital property.

Judith maintains, in any event, she was not treated equitably in that she did not receive enough to compensate her for her contribution to Terrence's education. In light of the facts here and considering the economic contributions made by each party, we cannot say that the trial court abused its discretion in the amount of maintenance awarded to Judith. The result here was not inequitable.

■ Judith next argues that the trial court erred in failing to award her one-half the cash surrender value of the $95,000.00 worth of life insurance policies. The trial court required Terrence to maintain $50,000.00 of insurance payable to the children until the younger child reaches eighteen. Terrence contends that the court's requirement of maintaining insurance payable to the children somehow changes the character of the insurance policies as property. We do not agree. The policies were acquired during the marriage and have a present cash value. That value should be included in the marital estate for distribution. KRS 403.190. The maintaining of the insurance for the children is in the nature of child support and has nothing to do with the valuation and distribution of the marital estate. *See Graham v. Graham*, Ky.App., 595 S.W.2d 720 (1980). Upon remand the

trial court shall correct the judgment to award Judith one-half the cash value, $3,500.00, of the insurance policies.

■ Judith's final allegation of error is that the trial court erred in failing to award her the sum for maintenance and support which she requested. The trial court awarded her $1,200.00. Judith contends that she and the children require $1,310.96 per month plus medical insurance to meet their minimum monthly needs.

■ Judith argues that the trial court failed to consider fault in the award of maintenance. Fault is not to be considered in determining whether a spouse is entitled to maintenance, but it may be considered insofar as the amount is concerned. *Chapman v. Chapman*, Ky., 498 S.W.2d 134 (1973). Judith contends that she should have received more money as maintenance because Terrence was at fault. Judith was awarded $400.00 per month as maintenance. There is no showing here that the trial court did not consider all relevant factors, including the concept of fault if it saw fit to do so, in making this award. Therefore, we must conclude that the trial court considered all relevant factors in accordance with KRS 403.200(2).

The matter of maintenance and child support is within the discretion of the trial court. *Browning v. Browning*, Ky.App., 551 S.W.2d 823 (1977) and *Bell v. Bell*, Ky., 494 S.W.2d 517 (1973). In this instance, though the court awarded less than Judith requested, we do not believe the trial court abused its discretion.

■ Terrence first addresses in his cross-appeal the issue of whether the trial court erred in finding that Judith was unable to work because of a physical disability. KRS 403.200(1)(a) and (b) establish the criteria for maintenance upon dissolution of marriage. Maintenance can be ordered only if the trial court finds both (a) and (b) to be true. *Inman v. Inman, supra*. In the instant case the trial court found that:

The petitioner has had training and has become a registered nurse but has not worked in her profession since 1970. She is unable to continue work in her profession because of physical disability and being required to stay with and take care of her infant children.

KRS 403.200(1)(a) and (b) provide that:

In a proceeding for dissolution of marriage or legal separation, or a proceeding for maintenance following the dissolution of a marriage by a court which lacked personal jurisdiction over the absent spouse, the court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance:

(a) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(b) Is unable to support himself through appropriate employment *or* is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home. (Emphasis added).

The trial court found that Judith was unable to support herself through appropriate employment *and* was required to stay home with her children. Terrence cross-appealed only on the grounds that the trial court erred in finding that Judith was unable to work because of a physical disability. Even if Terrence's contentions were correct, maintenance still would be appropriate because of the court's finding that the mother was required to stay home with the children.

■ The question of the correctness of the finding about Judith's disability must be considered as it is relevant as to the duration of maintenance. Terrence contends that nothing in the record indicates that psychiatric nursing involves "heavy lifting or frequent bending", the limitation placed upon Judith's physical activity by Dr. Richard Jelsma, a specialist in neurological surgery. Dr. Jelsma was the only expert witness who testified as to Judith's condition.

■ After examining the record and depositions, we cannot say that the findings of

the chancellor as to Judith's disability are clearly erroneous. It is settled that, pursuant to CR 52.01, the findings of a chancellor in a dissolution of marriage case may not be disturbed unless clearly erroneous. *Munday v. Munday*, Ky.App., 584 S.W.2d 596 (1979); *Bruton v. Bruton*, Ky.App., 569 S.W.2d 182 (1978). Dr. Jelsma testified as follows concerning Judith:

> ... the patient was having pain as she described that was related to the degenerative disc and beginning arthritic changes at L5, S1. As a result of her previous ruptured disc, there was narrowing at this level and the narrowing itself would produce some pain and in addition over a period of years there was beginning arthritis as a result of that narrowing and the arthritis also contributed to her pain.

He testified that her work as a registered nurse would be limited in that she "would have to work in a capacity that would not require lifting of patients or other objects or bending with her back." It was not clearly erroneous for the trial court to conclude that her disability would prevent her from working as a psychiatric nurse.

■ Terrence next contends that the trial court erred in awarding Judith lump sum maintenance in addition to an equal division of the marital estate. The question of whether a divorced spouse is entitled to periodic maintenance, in addition to a lump sum award, is ordinarily left to the discretion of the trial court. *Jackson v. Jackson*, Ky., 453 S.W.2d 744 (1970). KRS 403.200(2) states that the court, after considering all relevant factors, shall determine the amount and duration of maintenance. In this case Judith's contribution to Terrence's education was certainly a relevant factor to be considered. It does not appear that the trial court abused its discretion in making such an award, particularly since there was little marital property to divide.

■ Terrence finally argues that the trial court erred in limiting the children's visitation in his home to one (1) month during the summer. He maintains that some provision should have been made for alternating major holidays and the like. At the time of the final judgment, Terrence was engaged in the general practice of surgery in Antigo, Wisconsin. Judith and the two children were living in a Denver, Colorado, suburb. Considering the distance between the parties' residences and the fact that visitation rights are peculiarly within the discretion of the trial court, we cannot say that the court abused its discretion here. *Wilhelm v. Wilhelm*, Ky., 504 S.W.2d 699 (1974).

The judgment is affirmed on cross-appeal and reversed, in part, and remanded for entry of a corrected judgment on direct appeal.

All concur.