489 A.2d 782

**Albert John LEHMICKE, Appellant,**

v.

**Nancy Sipe LEHMICKE.**

Superior Court of Pennsylvania.

Argued March 29, 1984.

Filed Feb. 1, 1985.

Reargument Denied April 11, 1985.

Michael P. Dignazio, Media, for appellant.

Joseph L. London, Philadelphia, for Lehmicke, appellee.

Before BROSKY, WIEAND and McEWEN, JJ.

BROSKY, Judge:

The issue before us on this appeal is whether the trial court erred in awarding to appellee, appellant's former wife, compensation for her contributions to her former husband's medical education.

The parties were divorced on July 7, 1981 under the terms of the Pennsylvania Divorce Code.[1] Pursuant to an order for Pre-Trial Conference, discussion of Mrs. Lehmicke's request for alimony, equitable distribution of property, counsel fees and costs was held on August 18, 1981. Because no settlement was reached on those issues a special Master was appointed who held hearings late in 1981. The Master recommended that appellee be awarded $1,525 in counsel fees and costs, that alimony be denied, that appellant's medical degree be considered marital property and that appellee be awarded $64,790.00 as her share of that property. Exceptions were filed to the Master's Report and the trial court affirmed the recommendations as to alimony, counsel fees and costs and awarded Mrs. Lehmicke $64,-790.00 on equitable principles. This appeal followed.

1. 23 P.S. §§ 101 et seq.

Dr. and Mrs. Lehmicke were married on June 8, 1968. One child was born of the marriage. Dr. Lehmicke graduated from college shortly before the marriage. He was drafted in January, 1969 and served in the Army for approximately seventeen months during which time the parties resided in Baltimore, Maryland where Dr. Lehmicke was stationed. In July, 1970 the couple moved to Ohio where Dr. Lehmicke embarked on a three year accelerated program at Ohio State Medical School.

Mrs. Lehmicke testified that while her husband attended medical school she worked as a waitress five or six nights a week, earning between $30 and $40 a night. In the summers she also was employed as Recreational Assistant. Previous to the marriage she had worked as a nurse's aide. The monies Mrs. Lehmicke earned were used to support the family and possibly to some extent, to pay certain medical school tuition and expenses of her husband.

Dr. Lehmicke testified that while he was in medical school he received $240.00 per month in G.I. benefits. This money was used to make monthly payments on a car the couple had purchased. Dr. Lehmicke also borrowed $8,600 to help finance his education and received a $1,000 scholarship and $1,000 as payment for research projects he performed.

Dr. Lehmicke graduated from medical school in June, 1973 at which time the parties moved to Philadelphia where he began an internship. While the couple lived in Philadelphia Mrs. Lehmicke did not have a paying job.

The parties had been having marital difficulties since Dr. Lehmicke's second year in medical school and in May, 1974 they separated.

In September 1976 Mrs. Lehmicke began a two year nursing program at Philadelphia Community College. Her tuition and books were paid for by financial aid and scholarships. After she graduated Mrs. Lehmicke continued her education and in May, 1980 received a Bachelor's Degree in nursing.

At the time of the hearing Mrs. Lehmicke worked 3 or 4 days a week as a registered nurse. She and her son live in an apartment in Philadelphia. Dr. Lehmicke is a Board Certified pediatrician in private practice.

During their marriage the parties did not accumulate any significant property. Mrs. Lehmicke urges us to find, however, that the value of her former husband's medical degree and the consequent increase in earning capacity it promises should be divided between them based on equitable principles or in the alternative viewed as marital property subject to equitable distribution.

We will first address the question of whether Dr. Lehmicke's degree or future earning capacity is an assignable asset subject to equitable distribution.

Our research discloses that most jurisdictions that have considered the question have concluded that neither an advanced degree nor increased earning capacity is actually "property." For example, in *In re Marriage of Graham*, 194 Colo. 429, 574 P.2d 75, 77 (1978) the Colorado Supreme Court opined and we agree that:

> An educational degree, such as an M.B.A., is simply not encompassed even by the broad views of the concept of "property." It does not have an exchange value or any objective transferable value on an open market. It is personal to the holder. It terminates on death of the holder and is not inheritable. It cannot be assigned, sold, transferred, conveyed, or pledged. An advanced degree is a cumulative product of many years of previous education, combined with diligence and hard work. It may not be acquired by the mere expenditure of money. It is simply an intellectual achievement that may potentially assist in the future acquisition of property. In our view, it has none of the attributes of property in the usual sense of that term.

In *Mahoney v. Mahoney*, 91 N.J. 488, 453 A.2d 527 (1982) the New Jersey Supreme Court while noting that "[r]egarding equitable distribution, this Court has frequently held that an "expansive interpretation [is] to be given to the

word 'property' (Id. at 495, 453 A.2d at 531), nevertheless the court observed also that it "has subjected to equitable distribution an asset whose future monetary value is as uncertain and unquantifiable as a professional degree or license." Id. at 496, 453 A.2d at 531.

The Court concluded that equitable distribution of the value of a degree or increased earning capacity would be improper. The Court noted the following problems: A professional license or degree is a personal achievement of the holder. It cannot be sold and its value cannot readily be determined. (*Id.* at 495, 453 A.2d at 531); Equitable distribution of a professional degree would similarly require distribution of "earning capacity"—income that the degree holder might never acquire. (*Id.* at 497, 453 A.2d at 532); Moreover, any assets resulting from income for professional services would be property acquired after the marriage; the statute restricts equitable distribution to property acquired during the marriage. (*Id.* at 497, 453 A.2d at 532);[2] Valuing a professional degree in the hands of any particular individual at the start of his or her career would involve a gamut of calculations that reduces to little more than guesswork and even if such estimates could be made, there would remain a world of unforeseen events that could affect the earning potential of the degree holder. (*Id.* at 497, 453 A.2d at 532). See also *Hughes v. Hughes*, Fla. App., 438 So.2d 146 (1983); *Lira v. Lira*, 68 Ohio App.2d 164, 428 N.E.2d 445 (1980).[3]

Most recently this Court in *Hodge v. Hodge*, 337 Pa.Super. 151, 486 A.2d 951 (1984) held that increased earning capacity is neither real nor personal "property" in the usual

**2.** The Pennsylvania Divorce Code similarly defines "marital property" as property acquired during the marriage. See 23 P.S. § 401(e).

**3.** But see *In re Marriage of Horstmann*, Iowa, 263 N.W.2d 885 (1978); (increased earning capacity is a distributable asset); *Inman v. Inman*, Ky.App., 578 S.W.2d 266 (1979) (there are certain instances in which treating a professional license as marital property is the only way in which a court can achieve an equitable result). The *Inman* holding, however, is apparently limited. See *Leveck v. Leveck*, Ky.App., 614 S.W.2d 710 (1981) (where there was some marital property there is no need to treat a medical degree as a marital asset).

sense of the word. While we concluded that our Legislature did not intend increased earning capacity to be a divisible asset, we nonetheless were able to consider the increased earning capacity of one spouse in determining the amount and duration of alimony to be paid the other spouse. See Section 501 of the Divorce Code; 23 P.S. § 501.[4]

Other jurisdictions have likewise considered the support given by one spouse in awarding alimony or maintenance payments. See e.g. *Zohler v. Zohler*, Conn., 8 Fam.L.Rep. 2694 (1982); *In Re Lundberg*, 107 Wis.2d 1, 318 N.W.2d 918 (1982); *Lira v. Lira, supra; Graham v. Graham, supra.*

In this case, however, Mrs. Lehmicke did not contest the denial of her request for alimony and we are not in a position to make such an award.

The trial court though, fashioned a remedy by relying on Section 401(c) of the Act which provides:

(c) In all matrimonial causes, the court shall have full equity power and jurisdiction and may issue injunctions or other orders which are necessary to protect the interests of the parties or to effectuate the purposes of this act, and may grant such other relief or remedy as equity and justice require against either party or against any third person over whom the court has jurisdiction and who is involved in or concerned with the disposition of the cause.

Appellant contends that the court erred in relying on Section 401(c) since, appellant argues, that section was intended to provide only *pendente lite* remedies. We do not agree.

While Section 401(c) clearly does provide in part for protection during the pendency of an action, we find no indication that it is limited solely to such a purpose. In-

4. See also 23 P.S. § 401(d)(4) which provides that one of the factors to be considered in distributing marital property is "the contribution by one party to the education, training, or increased earning power of the other party". Unfortunately in neither the *Hodge* case nor in the present appeal did the parties acquire any significant amount of marital property.

stead, the Section provides in pertinent part that "the court shall have full equity power and jurisdiction and may issue injunctions or other orders which are necessary to ... *effectuate* the purposes of this act...." Among the stated purposes of the Act is to "effectuate economic justice between the parties who are divorced or separated...." 20 P.S. § 102(a)(6). Moreover, the statute expressly states that the objectives of which the above is one shall be considered in construing its provisions. 23 P.S. § 102(b).

See also Rounick, *Pennsylvania Matrimonial Practice,* § 18:6 in which the authors note; "Section 401(c) is, perhaps, the most far-reaching power heretofore given to a court in a matrimonial cause in order to protect the interests of the parties and to effectuate the purposes of the New Divorce Code. This provision should be applied liberally."

Section 401(c) is the same as § 601(2) of the Code proposed by the Joint State Government Commission and the comment to that section states in part that it is "... intended to give emphasis to the equity power and jurisdiction of the court *and* to make sure that it has effective power to deal with any problem which arises during the course of litigation:...."

 Keeping in mind the purpose of the Act we construe § 401(c) as granting the *full* equity powers for which it provides and therefore affirm the trial court's use of such power because we agree that the facts of this case compel such an exercise of equitable power.

 The parties had not accumulated marital property at the time of separation and Mrs. Lehmicke could not therefore be reimbursed for her contributions to her husband's education through a distribution of property. In another case the distribution of property might provide a full remedy. See 23 P.S. § 401(d)(4).

Similarly alimony was denied here. While the propriety of the denial is not before us as an issue we note that the lower court could properly have concluded that an equitable

remedy was necessary in this case because of the unavailability of alimony to Mrs. Lehmicke. This is so because unlike the alimony provisions of some of the states whose cases were cited earlier in this opinion, our statute provides only for "rehabilitative alimony".[5] An award of alimony in a case like the present one would be in the nature of "reimbursement" rather than "rehabilitation" and would therefore be inappropriate under the terms of the statute.

The trial court could not fashion an equitable distribution or an alimony award and yet the facts before it compelled some recompense for Mrs. Lehmicke who sacrificed for several years so that her husband could obtain his medical degree. Shortly after the degree was received the marriage failed and Mrs. Lehmicke was unable to see any benefit for her sacrifice. Dr. Lehmicke, on the other hand, was able to pursue a career as a physician.

■ While we therefore agree with the trial court's exercise of its equitable power we do believe that a different measure of the amount of the award should have been used. The trial court awarded Mrs. Lehmicke a one-sixth share of the estimated value of her husband's degree which in turn was valued based on his estimated earning capacity. We find no explanation of the decision to award that amount and believe that instead of awarding a percentage of the estimated value of the degree, that Mrs. Lehmicke should be compensated for the financial support she gave Dr. Lehmicke while he was a student; although, as we have said, the award is not an alimony award.

■ We will remand this case with instructions that the lower court consider Mrs. Lehmicke's contribution to her husband's attainment of his degree.

We recognize that Mrs. Lehmicke may not have actually paid much, if any, actual tuition, but it cannot be doubted

5. The New Jersey alimony statute for example, provides that the court can order alimony or maintenance as the circumstances of the parties and nature of the case shall render fit, reasonable and just. See N.J.S.A. 2A:34–23.

that her financial support of her former husband and their child enabled him to pursue his education.

The award to her is in the nature of recompense for her contribution and ought to be related to it. In this respect we agree with the approach taken by the New Jersey Supreme Court in *Mahoney v. Mahoney, supra* in which the court awarded what it termed "reimbursement alimony." While the lower court's award in this case is not in the form of alimony, it is based on the same equitable principles on which the *Mahoney* court relied. The *Mahoney* court rejected a measure of damages based solely on the cost of educational assets, but instead said that the supporting spouse should be compensated for all financial contributions towards her former spouse's education including household expenses, educational costs, school travel expenses and other contributions used by the supported spouse in obtaining his or her degree or license. We would add that in this case in which the couple had a child while Dr. Lehmicke pursued his education, the trial court should also consider the parties' relative contributions to the support of that child.

We favor an award based on Mrs. Lehmicke's contributions, rather than the estimated value of the degree because we believe that such an award more fairly compensates the spouse for her contributions. It is her contributions that are being reimbursed, not a piece of property that is being awarded.

We believe that such an award also avoids the speculation and uncertainty involved when an award is based on estimated value of a degree. For a similar approach to valuation see *DeLarosa v. DeLarosa, supra; Zohler v. Zohler, supra; Inman v. Inman, supra.*

Order affirmed in part and reversed in part and case remanded for further proceedings consistent with this opinion. Jurisdiction is not retained.

McEWEN, J., concurs in the result.

WIEAND, J., files a concurring and dissenting opinion.

WIEAND, Judge, concurring and dissenting:

Although I concur with portions of the majority opinion, I am unable to agree with the majority's decision to remand. The evidence showed that the wife-appellee did not contribute to the cost of the husband-appellant's medical school education; and to the extent that she contributed to the support of the family while appellant attended classes, neither the Divorce Code nor principles of equity require restitution. Therefore, I would vacate and set aside the order directing appellant to pay appellee the sum of $64,-790.00.

Albert J. Lehmicke and Nancy Sipe Lehmicke were married on June 8, 1968, following Albert's graduation from college. After a seventeen month stint in the army, Albert and his wife moved to Ohio, where Albert matriculated at Ohio State Medical School. Following graduation in June, 1973, both husband and wife moved to Philadelphia, where Albert served a medical internship. The parties separated in May, 1974, one child having been born of their marriage. A decree in divorce was entered on July 7, 1981. By that time, Dr. Lehmicke had become a Board Certified Pediatrician and, after two years of employment by the Media Clinic, had entered private practice in April, 1980. Nancy Lehmicke, meanwhile, had completed a two year nursing program at Philadelphia Community College and, in May, 1980, had earned a Bachelor's Degree in nursing. At the time of the divorce, she lived with the parties' son in an apartment in Philadelphia and was working as a registered nurse.

During their brief marriage the parties did not accumulate any significant marital property. The divorce court, however, determined that Dr. Lehmicke's medical degree was marital property and awarded Mrs. Lehmicke the sum of $64,790.00 as her distributive share thereof.[1] The majori-

1. Dr. Lehmicke's medical degree was given an estimated present value of $388,740.00 based on his earning capacity. Mrs. Lehmicke was awarded a one-sixth interest, or $64,790.00, payable in six yearly installments.

ty concludes that the medical degree was not marital property. It remands, however, for a hearing to determine, on equitable principles, what amount should be awarded to Mrs. Lehmicke to reimburse her for contributions to family support made while her husband was attending medical school. I agree with the majority that Dr. Lehmicke's medical degree was not marital property. I disagree that Mrs. Lehmicke is entitled to recover, on either equitable or legal grounds, the contributions which she made to the family's support while her husband was unable to work because he was pursuing a degree in medicine.

The Divorce Code [2] does not compel or even recommend that an advanced academic degree be deemed marital property. An academic degree is personal to the holder; it can neither be transferred nor inherited. It does not have an exchange value. A person who has earned an advanced degree may or may not parlay it into a successful career in the same field. Thus, a value cannot readily be placed upon a degree which, in substance, is nothing more than a recognition of academic achievement. In short, the degree lacks any and all of those attributes which are usually associated with property.

An advanced degree, of course, creates a potential in the holder to earn money and acquire property in the future. A potential for increased earnings, however, "is not limited to situations involving formal education. [It] can be a result of on-the-job training, in-job experience, apprenticeships or a host of other factors which make the labor of an individual more valuable...." *Hodge v. Hodge*, 337 Pa.Super. 151, 156, 486 A.2d 951, 953 (1984). Whether the potential for increased earnings will be realized, of course, must necessarily depend upon personal variables not readily ascertainable in advance, such as industry, diligence, integrity, ability and intelligence.

In *Hodge*, a panel of this Court held that an advanced degree in medicine was not property. For similar reasons, most courts which have considered the issue have concluded

---

**2.** 23 Pa.C.S. § 101 et seq.

that advanced, educational degrees are not marital property and cannot be divided between spouses. See: *In re Marriage of Graham,* 194 Colo. 429, 574 P.2d 75 (1978) (master's degree in business administration); *Wilcox v. Wilcox,* 173 Ind.App. 661, 365 N.E.2d 792 (1977) (future salary of college professor with Ph.D.); *Mahoney v. Mahoney,* 91 N.J. 488, 453 A.2d 527 (1982) (master's degree in business administration); *Frausto v. Frausto,* 611 S.W.2d 656 (Tex. Civ.App.1981) (medical degree); *DeWitt v. DeWitt,* 98 Wis.2d 44, 296 N.W.2d 761 (1980) (law degree).

It does not follow that a divorce court can ignore the investment which one spouse has made in the education or training of the other. The Divorce Code requires that a court which is called upon to divide marital property in an equitable manner shall consider "[t]he contribution by one party to the education, training, or increased earning power of the other party." Divorce Code of April 2, 1980, P.L. 63, § 401, 23 P.S. § 401(d)(4). In the instant case, the parties were involved in a relatively short marriage during which little or no marital property was accumulated. Thus, there is no marital property to be distributed.

In the usual case, an advanced degree will also manifest itself in an increased earning capacity of the holder. In a sense, the spouse who contributes to the other's obtaining of a degree has made a marital investment. One spouse has "postponed, as it were, present consumption and a higher standard of living, for the future prospect of greater support and material benefits." *Mahoney v. Mahoney, supra* 91 N.J. at 501, 453 A.2d at 534. This investment will make it possible for the holder of the degree to contribute more substantially to the support of the family, including the other spouse, whether in the form of support or alimony payments. See: *Hodge v. Hodge, supra.* This too failed to provide a satisfactory solution in the instant case, however, for Mrs. Lehmicke had achieved an educational degree in her own right and was able to support herself. Therefore, the court held that she was not entitled to an award of

alimony. Mrs. Lehmicke did not appeal from that determination.

I also agree with the majority that where one spouse has contributed to the cost of an advanced degree or to training acquired by the other, a court may rely upon equitable principles to fashion a remedy. Where, as in the instant case, the investment has not manifested itself in acquired marital property and cannot be returned in the form of enhanced support, a court charged with doing equity may nevertheless order reimbursement to the investing spouse in order to avoid unjust enrichment of the student spouse. This, as Judge Brosky has pertinently noted, is authorized by the provisions of Section 401(c) of the Divorce Code which direct that courts shall have the power to do equity in all matrimonial cases. That courts shall enter orders as equity and justice may require is also suggested by Section 102(a)(6) which mandates that the Divorce Code be interpreted and applied by a court so as to "[e]ffectuate economic justice between parties who are divorced or separated." The courts of other jurisdictions have achieved similar results. See: *Moss v. Moss*, 639 S.W.2d 370 (Ky.App.1982); *Mahoney v. Mahoney, supra; O'Brien v. O'Brien*, 114 Misc.2d 233, 452 N.Y.S.2d 801 (1982); *Hubbard v. Hubbard*, 603 P.2d 747 (Okla.1979). See also: 24 Am.Jur.2d, Divorce and Separation § 898; Annot., 4 A.L.R.4th 1294.

It must be emphasized, however, that there is no absolute right to reimbursement merely because one spouse has made contributions to the other's education or training. Such contribution is merely a factor to be considered, among others, as a court seeks to achieve economic justice between the parties. If the contributing spouse's investment in the education of the other has been realized by acquired marital property or the contributing spouse has shared in the fruits of the other's education or training during long years of marriage, it is possible that economic justice can be effectuated solely by a division of marital property or by an award of support or alimony. In such instances, a separate reimbursement for contributions made

to the other's education will most likely be unnecessary to achieve economic justice. See: *Wisner v. Wisner*, 129 Ariz. 333, 631 P.2d 115 (1981); *Todd v. Todd*, 272 Cal.App.2d 786, 78 Cal.Rptr. 131 (1969). See also: Divorce Code § 401(d)(4).

I am compelled to disagree with the majority, however, when it remands for the trial court to determine the amounts which the wife contributed to the support of the family while the husband was attending medical school. Since adoption of an Equal Rights Amendment to the Constitution in Pennsylvania, it is clear that each spouse owes to the other and to the children born of their marriage a duty of support. This "right of support depends not on the sex of [the spouse] but rather upon the need in view of the relative financial circumstances of the parties." *Henderson v. Henderson*, 458 Pa. 97, 101, 327 A.2d 60, 62 (1974). When spouses decide to separate or divorce, a nonworking spouse is not required to reimburse a working spouse for contributions previously made by the working spouse to support the nonworking spouse and children born of the marriage. This is true whether the idleness of the nonworking spouse was caused by illness, by physical or mental disability, because of the need to care for children, or because, for reasons of sloth, the spouse was unwilling to work. Why, then, should there by a different rule where the inability of a spouse to work is brought about by the need to attend classes? Or, to state it differently, if a working spouse can recover contributions made to the family while the nonworking spouse is pursuing an academic degree, why shouldn't a working spouse be entitled to recover such contributions upon divorce whenever the other spouse, for whatever reason, failed or was unable to work? Logic suggests that the duty of spousal support should not be treated differently merely because contributions of support are unequal while one spouse seeks an advanced degree or undergoes training intended to increase his or her earning power.

The duty of support is imposed by rule of law on both spouses. Compliance with this legal duty does not result in

unjust enrichment to the other. Marriage is for better or worse. It is not entered with a conscious intent that at some future time there will be an accounting of and reimbursement for moneys contributed to the support of the family. To inject such a concept would, in my judgment, have far-reaching and unfortunate consequences. If I am correct in my view regarding the duty of spousal support, then it is difficult to perceive good reason for creating an exception which would reimburse a spouse for support contributed while the other is attending an institution of higher learning or otherwise obtaining advanced training.

The imposition of an equal duty on both spouses to pay nonrecoverable support to the other does not deny the financial sacrifices made by a working spouse while the other spouse acquires an education. Those sacrifices are real and, at times, burdensome. The working spouse may have foregone his or her own educational goals; both spouses may have reduced their standard of living for a time; and the experience may have been financially and emotionally draining. The decision to take that route in preference to another, however, is a decision born of the marriage. That the marriage subsequently proved unsuccessful does not permit a court to turn back the clock and return the parties to the same positions in all respects which they occupied before they assumed the mutual obligations of marriage. Return to the status quo which existed prior to marriage is not one of the goals of the Divorce Code.

I would hold that a nonworking spouse is liable to reimburse a working spouse only for sums advanced in excess of the legal duty of support imposed by law upon the working spouse. In most cases where the nonworking spouse is engaged in obtaining an education, this will be the amount contributed by the working spouse to the cost of educating the other spouse. Such a limit on the right to obtain restitution on equitable grounds is consistent with the contract of marriage, the legal duty of spousal support,

and the purpose of the Divorce Code to effectuate economic justice between the parties upon divorce.

In the instant case, the evidence established that Mrs. Lehmicke's contributions while her husband was attending medical school were limited to spousal and child support. She worked as a waitress five or six nights a week and earned between thirty and forty dollars per night. She also worked summers as a recreation assistant. Her earnings were used to pay rent and to purchase food and clothing for the family. Although some tips were kept in a jar and may have been used on occasion to purchase books for her husband, it seems clear that Dr. Lehmicke's financial resources were in excess of the cost of his medical education. His education cost $1,877.00 per year for three years or a total of $5,631.00. During this three year period he earned $1,000.00 by doing research work, received $1,000.00 in scholarships, and borrowed $8,600.00. He also received $240.00 per month in veteran's benefits, which were used to make monthly payments on a car. Moneys received in excess of the annual cost of his education were used to pay household expenses.

This evidence does not establish that Mrs. Lehmicke paid for Dr. Lehmicke's medical education. It does show that she contributed to the support of the family, including her son, while Dr. Lehmicke was unable to work full time because he was attending medical school. These were support contributions which she was legally obligated to make. She was obligated to support her husband, as well as her son, while her husband was unemployed for any reason provided, only, that he had not forfeited the right of support by his conduct. Because appellee was obligated by law to provide spousal support she is not entitled to reimbursement therefor upon dissolution of the marriage. She was no more entitled to restitution for supporting her husband than he would have been if he had been the working spouse and had supported her while she stayed at home to care for their son. In either case, the spouses would have been building and investing for the future of

576

their family. In either case, there would have been no unjust enrichment because of support payments made to benefit the family.

For the foregoing reasons, I would reverse and set aside the order of the trial court which awarded appellee the sum of $64,790.00 as compensation for her interest in appellant's medical degree.