## Mescall v. Mescall

*William A. Nast,* for plaintiff.
*Timothy J. O'Connell,* for defendant.

DOWLING, *J.,* May 23, 1990 —

"I'll see their trial first, bring in their evidence.
"Thou robed man of justice, take thy place,
"And thou, his yoke-fellow of equity,
"Bench by his side." *King Lear,* Act 3, Scene 5.

Even in the depths of his madness, Shakespeare's deposed potentate Lear was able to bear witness to one of the central precepts of the Anglo-Saxon system of jurisprudence: the perpetual, and unbreakable, relationship between the law side of the court, represented by a "robed man of justice," who upholds the heritage of statute and common law bequeathed to the present by the past, and the "yoke-fellow" of equity, which, as every first-year law student is taught, exists so that the court "can

do that which is right." Needless to say, these two are intertwined in a manner that is as intricate, and yet as unitary, as the lacings of the strands of a DNA molecule; they are less Siamese twins than they are right and left hemispheres of the same brain. It falls to us in the instant case to decide which of these spheres of action should control the disposition of a division of property between a husband and wife — if one can use that term with reference to two partners who married two weeks after Independence Day and separated during Thanksgiving week that same year.

Plaintiff and defendant were married on July 17, 1989, and separated on November 25, 1989. The instant action followed on January 23, 1990, when plaintiff filed a petition for special relief under section 403(a) of the Divorce Code to enjoin defendant from removing or destroying her premarital personal property, which she had left at the marital home when the parties separated.

This request for an injunction was granted on January 24, 1990, and a hearing on the need for a continuation of the injunction was scheduled and then rescheduled at counsels' request for March 30, 1990. At that time it was determined that defendant no longer had possession of many of the missing items, although he claimed not to know what, specifically, had become of them.

Plaintiff has asked this court to enter a monetary award in her favor for the value of the missing items, to which defendant replies that it is an improper exercise of the court's equitable powers for it to assign a sanction based upon an alleged misappropriation of non-marital property. Defendant's reasoning is that, since non-marital property

is not subject to equitable distribution, it is also not subject to the court's remedial or punitive equitable authority.

Title 23 P.S. §401(c) of the Divorce Code states:

"(c) In all matrimonial causes, the court shall have full equity power and jurisdiction and may issue injunctions or other orders which are necessary to protect the interests of the parties or to effectuate the purposes of this act, and may grant such other relief or remedy as equity and justice require against either party or against any third person over whom the court has jurisdiction and who is involved in or concerned with the disposition of the cause."

With this language as our standard, we can see no tenable basis for defendant's notion that the court's equitable jurisdiction ends, as if at the border of Dante's *Inferno,* at a sign marked: "Non-Marital Property: Abandon Equity, All Ye Who Enter Here." There is no dispute that the missing and/or destroyed property was plaintiff's premarital personalty. There is likewise no doubt that the court's equitable powers are to be viewed as sweeping rather than as constricted, as the court in *Lehmicke v. Lehmicke,* 339 Pa. Super. 559, 489 A.2d 782 (1985) said:

"While section 401(c) clearly does provide in part for protection during the pendency of an action, we find no indication that it is limited solely to such a purpose. Instead, the section provides in pertinent part that 'the court shall have full equity power and jurisdiction and may issue injunctions or other orders which are necessary to . . . effectuate the purposes of this act. . . .' Among the stated purposes of the act is to 'effectuate economic justice between the parties who are divorced or separated. . . .' 20 P.S. §102(a)(6). Moreover, the statute expressly

states that the objectives of which the above is one shall be considered in construing its provisions. 23 P.S. §102(b).

"See also Rounick, Pennsylvania Matrimonial Practice, §18:6 in which the authors note; 'Section 401(c) is, perhaps, the most far-reaching power heretofore given to a court in a matrimonial cause in order to protect the interests of the parties and to effectuate the purposes of the New Divorce Code. This provision should be applied liberally.'

"Section 401(c) is the same as section 601(2) of the code proposed by the Joint State Government Commission and the comment to that section states in part that it is '. . .intended to give emphasis to the equity power and jurisdiction of the court and to make sure that it has effective power to deal with any problem which arises during the course of litigation. . . .' " *Lehmicke* at 565-6, 489 A.2d at 785.

Since the instant matter is clearly one relating to the "protection during the pendency of an action" of one of the parties, and since it qualifies with equal accuracy as "[a] problem which arises during the course of litigation," we regard the issue of our equitable authority in this area as settled.

There is similarly no legitimacy to Mr. Mescall's contention that "absolutely no evidence was presented that the defendant had disposed of the property after the entry of the January 24, 1990 preliminary injunction. As the plaintiff is unable to meet her burden of proof in this regard a finding of contempt cannot properly be made against the defendant." If defendant continued in physical possession of plaintiff's property after January 24, 1990, then he was indeed in explicit contempt of the order; if he in fact sold the property prior to January 24, and then retained the proceeds of the sale after that date, he was in the position of holding those

monies in a constructive trust for the plaintiff's benefit, and was obligated to turn the money for these items over to her as of January 24; and if he gave the items away to someone else, he was equally obligated to compel their return to plaintiff after the injunction took effect. In any event, we have no alternative, absent a clear demonstration of what became of these items, to hold defendant, as the last person who is known to have been in control of this property, accountable for its disposition and ultimate fate.

Finally, defendant's argument that plaintiff's valuation of the property at the March 30, 1990 hearing was insufficient to allow for the entry of a judgment for herself finds no favor with us. As we stated at the time, we found defendant's overall testimony to be unbelievable, and plaintiff's to be credible. We see nothing in the component parts of plaintiff's total evaluation of the missing property at $5,260 to be unworthy of belief; and, especially when weighed against the various elements of defendant's conduct in this matter, we accept her evaluation as it now stands.

Accordingly, we enter the following

## ORDER

And now, May 23, 1990, after a review of the transcript and briefs in the above-named case, we order that defendant, Daniel P. Mescall, within 10 days of the date of this order, shall return to plaintiff, Arlene Mescall, all items of property enumerated as plaintiff's exhibit 1 at the hearing of March 30, 1990; or, alternatively, to pay to plaintiff, Arlene A. Mescall, by that date the sum of $5,260 for all of said property, or a sum equal to the total amounts listed on the said exhibit 1 for all items not so returned, as appropriate.