**John Bruce INMAN, D.M.D., Appellant,**

v.

**Sue Osborne INMAN, Appellee.**

Court of Appeals of Kentucky.

Feb. 23, 1979.

Dennis M. Clare, Nold, Mosley, Clare, Hubbard & Rogers, Louisville, for appellant, John Bruce Inman, D.M.D.

Patricia A. Lewis, Lewis, Bland & Preston, Elizabethtown, for appellee, Sue Osborne Inman.

Before HAYES, REYNOLDS and WILHOIT, JJ.

HAYES, Judge.

The marriage of John and Sue Inman was dissolved after seventeen years and three children. During the course of the marriage the Inmans had come to possess an expensive home and several vehicles, but these items were so heavily encumbered that the couple's net worth was zero, give or take a few hundred dollars. John Inman is a dentist; Sue is a teacher. Mrs. Inman has worked steadily throughout most of the marriage. John had not begun dental school at the time of the marriage. Both John and Sue contributed financially to John's ability to go to dental school. John has worked steadily as a dentist since becoming licensed to do so, at first in the Army, and in recent years in private practice. Prior to the dissolution, Dr. Inman had begun to learn the specialty of orthodontics, and may reasonably be expected to expand his practice in that direction. Immediately prior to dissolution of their marriage, John and Sue had a lifestyle which apparently reflected prosperity, but in fact they were on the brink of bankruptcy.

Although John's gross income from his dental practice had been in the neighborhood of $90,000 for the years 1975–77, he had netted well under $40,000 for each of the years 1975 and 1976. In 1977, according to information submitted by Dr. Inman and accepted by the circuit court, his net income had plummeted to less than $18,000. (There was convincing expert testimony to the effect that with reasonable business practices, a dentist in Dr. Inman's position should net 45 or 50 percent of his gross.)

The Meade Circuit Court found that Dr. Inman's license to practice dentistry is marital property, but did not place a dollar value on the license. Apparently proceeding under the theory that Dr. Inman's future earning capacity is marital property, the court allocated to Mrs. Inman most of the valuable marital assets, including the marital domicile. (This court learned during oral arguments that because of foreclosure by the home's mortgagees resulting from Dr. Inman's default on mortgage payments, the house has been lost. The circuit court, knowing that foreclosure might be imminent, provided that in that event, Dr. Inman was to pay Mrs. Inman $60,000 over the next ten years.)

The principal question arising on appeal is whether the trial court acted improperly in giving Sue most of the benefits of property ownership, i. e. possession, while giving John most of the concomitant burdens, i. e. responsibility for most of the indebtedness. Since the distribution was apparently based in part on the classification of Dr. Inman's license to practice dentistry as marital property, it is first necessary to consider the propriety of that finding. As the briefs indicate, this is an issue of first impression in Kentucky and there is no overwhelming trend among other jurisdictions. Certainly a license to practice a profession lacks many attributes of most sorts of property—it is not, for example, in any way transferrable. The other major difficulty with treating a

professional license as marital property is that its value is extremely difficult to quantify. Further, once a dollar value is placed on official permission to practice a profession, a court is still faced with the very difficult job of deciding the portion of the capability which is owing to the other spouse's efforts.

This court has strong reservations about placing a professional license in the category of marital property. Doing so can only create another field for battle in the already complex and delicate area of division of marital property. In spite of these reservations, however, we feel that there are certain instances in which treating a professional license as marital property is the only way in which a court can achieve an equitable result.

To flatly refuse to find any sort of protected property interest would work the grossest inequity in certain instances. The apparently rather common situation in which one spouse puts the other through graduate or professional school, followed closely by a dissolution upon the completion of the schooling, allows perhaps the clearest exposition of the problems involved. In those instances it is usually the case that little or no marital property has been accumulated. In such instances there is generally no entitlement to maintenance as each spouse is self-supporting. Thus the spouse who has devoted much of the product of several years of labor to an "investment" in future family prosperity is barred from any return on his or her investment. The other spouse has received a windfall of contribution to his or her increased earning capacity. Had he not had a spouse's support, he might well have been compelled to prolong or delay his professional education while earning enough to support himself and meet education costs, or to go deeply into debt.

On the other hand, different considerations may apply when a sizeable marital estate is built up over the course of a long marriage. In such instances, it might be inequitable to award to a spouse who contributed to the other spouse's earning ca-

pacity years prior a "property" interest in the other's professional degree *in addition* to considerable property which is in substantial part the fruit of the increased earning capacity. Such a division of property could amount to awarding an interest far out of proportion to any reasonable apportionment of interest in the degree.

The clearest exposition of the two leading schools of thought on whether sufficient indicia of "property" can be attributed to an educational degree to make it partitionable under the Uniform Dissolution of Marriage Act may be found in the recent Colorado case, *In re Marriage of Graham,* Colo., 574 P.2d 75 (1978), heard by the state Supreme Court en banc.

In *Graham,* the wife had contributed 70% of the family income, in addition to most of the household work, while her husband acquired an MBA degree. There was no accumulated property (under the conventional definition of property at any rate). However, the trial court heard expert testimony that the degree conferred upon Mr. Graham an increase in his earning capacity in excess of $80,000.

Justice Lee's majority opinion, concurred in by three other justices, held that an educational degree is not property in that:

it does not have an exchange value on an open market. It is personal to the holder. It terminates on the death of the holder and is not inheritable. It cannot be assigned, sold, transferred, conveyed, or pledged. An advanced degree is a cumulative product of many years of previous education, combined with diligence and hard work. It may not be acquired by mere expenditure of money. It is simply an intellectual achievement that may potentially assist in the future acquisition of property. In our view, it has none of the attributes of property in the usual sense of that term.

Justice Carrigan's dissent, in which two other justices joined, argues powerfully that the husband's increased earning power, represented by his degree, should indeed be counted as marital property where there is no accumulated marital property and the

spouse who subsidized the degree is ineligible for maintenance. Justice Carrigan argues that, " . . . equity demands that the courts seek extraordinary remedies to prevent extraordinary injustice." He notes that if there had been marital property or if Anne Graham had been eligible for maintenance, i. e. had been non-self-supporting, that there would have been no problem in achieving an equitable solution.

As matters stood, however, Anne Graham would walk away empty-handed from a marriage to which she had made substantial contributions. Her former husband would leave with a greatly increased earning capacity, due in substantial part to her efforts.

In addition to its reliance on the ability of courts of equity to fashion extraordinary solutions, the *Graham* dissent notes that classification of earning capacity as property is not, in other contexts, considered so farfetched. It notes that one who tortiously destroys or reduces another's earning capacity must make monetary compensation for that loss of capacity, that had Anne Graham been widowed by the tortious act of a third party, she would have been entitled to compensation based on her husband's projected future earning capacity.

We would further add that the United States Supreme Court had no difficulty in finding, for Fourteenth Amendment purposes, property interest in such personal and nontransferrable terms as tenured federal employment, *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed. 15 (1974), and, to a limited degree, to government largesse, *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) n.8.

We mention these last cases not to suggest that a constitutional test for whether an item is property is here applicable, but only to demonstrate that a court, in defining the statutory concept, (marital) "property," is in distinguished company when it refuses to be hamstrung by narrow definitions of "property."

Proper guidelines for determining whether a marital property classification is proper in a particular instance might include whether there is more tangible marital property whose division would work equity, and the extent to which there was reciprocal aid. Spouse A's interest in spouse B's earning capacity might be partially or totally extinguished if spouse B had returned the favor and helped to put spouse A in the position of having a saleable skill. Another important factor to consider might be the extent to which the nonlicenseholder has already or otherwise benefited financially from his or her spouse's earning capacity, or is eligible for maintenance. These guidelines are meant to be illustrative, not exhaustive.

The appellant maintains that in any event it is improper to allocate to the appellee both an interest in his professional earning capacity and an interest in his practice, in that such allocation is double repayment for the same obligation. We would be inclined to agree, except that some evidence suggests that the establishment and building of Dr. Inman's practice might to some degree be the result of team effort over and above the team effort expended in the acquisition of his degree. We ask the circuit court, on remand, to make specific findings as to whether and to what extent Sue Inman has an interest in John Inman's practice, as distinguished from increased earning capacity conferred by his license to practice dentistry.

While we think it reasonable and sometimes necessary for courts to have the power to find a property interest for the holder's spouse in a professional degree, we wish to place very strict limitations on apportionment of property pursuant to such findings. In most cases, we feel that the best measure of a spouse's interest in such a degree should be measured by his or her monetary investment in the degree, but not equivalent to recovery in quasi-contract to prevent unjust enrichment.

Thus the amount spent for direct support and school expenses during the period of education, plus reasonable interest and adjustments for inflation, should be apportioned to the spouse who provided support

when, as in the case of the Inmans', there is little or no marital property acquired through the increased earning capacity provided by the supported spouse's degree or training.

Thus we remand this case to the Meade Circuit Court for findings as to Sue Inman's property interest in John's license to practice dentistry, measured by her monetary contribution to his earning capacity as a dentist, and for calculation of the present value of her interest.

■ We are also faced with the issue of whether it was proper to award to Sue Inman $100 per month maintenance.

Mrs. Inman is a steadily although relatively modestly paid worker with many years experience in an apparently secure job.

While it is not clear from the evidence that she could not raise hear earning capacity somewhat, it is clear that as a teacher she cannot bring her income above a comparatively modest range.

The lower court has awarded her the benefits of many of the marital assets and has allocated most of the concomitant financial burdens to Dr. Inman.

The lower court has also placed on Dr. Inman a substantial child support obligation which will relieve much of the financial burden which would otherwise fall on Mrs. Inman as custodian of the couple's three children. In view of these circumstances, an award of periodic maintenance payment to Mrs. Inman is improper. KRS 403.200 provides:

> In a proceeding for dissolution of marriage or legal separation . . . the court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance:
> (a) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and
> (b) Is unable to support himself through appropriate employment or is custodian of a child whose condition and circumstances make it appropriate that the custodian not be required to seek employment outside the home.

The statute requires that the conditions of both subsections (1)(a) and (1)(b), *supra,* be met in order for an award of maintenance to be appropriate. In the instant case, the circumstances described in subsection (1)(b) clearly do not exist. Thus the order of the trial court that Dr. Inman pay $100 a month in maintenance must be vacated.

■ In summation, we affirm in principle the Meade Circuit Court's allowance of a professional degree (or the increased earning capacity that it represents) as marital property. However, we find that the court has not made sufficient findings of fact to support the particular division it has made. We thus direct the trial court to find; a) the approximate dollar value of Sue Inman's contribution to Dr. Inman's acquisition of a license to practice dentistry, b) the approximate dollar value of Dr. Inman's increased earning capacity, c) the approximate dollar value, if any, of Mrs. Inman's contribution to the worth of Dr. Inman's practice.

As noted above, the reason that the courts are forced to deal with the difficult problems arising from this case is that the Inmans, even though they have had two steady incomes, including Dr. Inman's well-above-average income, were, at the time of their dissolution, so deeply in debt that they had a net worth of close to zero. The record suggests, but does not clearly show, that the couple's indebtedness resulted entirely from a combination of Dr. Inman's poor management of his own business and some disastrous investments.

The degree of Mrs. Inman's participation in any of these unfortunate ventures appears from the record to be limited, but that issue is not made clear. If Mrs. Inman was in fact a willing participant in the acquisition of these debts, it is unreasonable that she be allowed to have the benefit of all of the possessions accumulated during the marriage while her former husband must continue to bear all of the burdens.

If John Inman's professional earning capacity is a marital asset, it is clearly offset to some extent by the net indebtedness of the marriage. It would be unreasonable to expect Sue Inman, with her limited salary, to undertake repayment of debts which she never would or could have assumed on the strength of her earnings alone. It is equally unreasonable to allow her to totally escape the impact of these debts if she played a substantial part in their acquisition. We would ask the trial court, on remand, to take this matter into account, and if necessary to take more evidence as to Mrs. Inman's degree of assent to, and contractual liability for, debts contracted during the marriage.

As noted *supra,* we learned during appellate oral argument that Sue and the children have lost the marital domicile through foreclosure because of Dr. Inman's default on mortgage payment. He is now under court order to pay her $60,000 in the next ten years in lieu of mortgage payments. The trial court should certainly consider the effects of this change in circumstances on the relative burdens and benefits of John and Sue Inman.

For these reasons the judgment of the circuit court is affirmed in part and reversed in part, and remanded for further proceedings consistent with this opinion.

REYNOLDS, J., concurs.

WILHOIT, J., dissents.

WILHOIT, Judge, dissenting.

I respectfully dissent from so much of the majority opinion as holds that Dr. Inman's license to practice dentistry should be treated as marital property, and as denies Mrs. Inman maintenance. The very thoughtful opinion of the majority is persuasive, aimed as it is at reaching an equitable result in a perplexing factual situation. Nevertheless, in this particular case it seems to me that an equitable result can better be reached through an award of maintenance rather than by resort to the tenuous proposition that a license to practice a profession is marital property. Aside from conceptual difficulties, the introduction of such a notion into our law is apt to cause at least as many problems as it would solve.

KRS 403.190 specifically provides that marital property shall be divided "without regard to marital misconduct," while such a stricture does not apply to maintenance. Consider a situation in which a spouse helps to put a husband or wife through professional school but sometime after graduation and before substantial marital property has been acquired deserts the young professional for an older and wealthier professional person. A most inequitable result might be reached by allowing this spouse to share in, as marital property, the professional license of the deserted partner.

In *Casper v. Casper,* Ky., 510 S.W.2d 253 (1974), the Court sensibly read the "unable to support himself" provision of KRS 403.-200(1)(b) as being relative rather than absolute. It concluded that the "standard of living established during the marriage" provision of subsection (2)(c) of that statute is to be considered in determining whether a spouse is able to support himself. In the present case it is clear that Mrs. Inman is capable of supporting herself, but not to the standard of living established by the parties during their marriage. When this and other factors relevant to the determination of the amount of maintenance are considered, an equitable result can be reached here.

I recognize that for various reasons it may not always be possible to use maintenance to reach an equitable result in divorce proceedings. Perhaps this problem should be addressed by the Legislature. The marital property concept simply does not fit.