182 N.J. Super. 616 (1982)
442 A.2d 1072
ANITA HILL, PLAINTIFF-RESPONDENT,
v.
ROBERT HILL, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 8, 1981.
Decided February 9, 1982.
*617 Before Judges MATTHEWS, PRESSLER and PETRELLA.
W. Marshall Prettyman argued the cause for the appellant (Sydney N. Lane, Essex-Newark Legal Services, attorney).
Peter Rosen argued the cause for the respondent (Rosen & Garodnick, attorneys).
The opinion of the court was delivered by PRESSLER, J.A.D.
*618 This is a companion appeal to Mahoney v. Mahoney, 182 N.J. Super. 598, decided this day. It raises in a variant context the problems involved when the husband is at the threshold of a professional career, has enjoyed the benefits of his wife's financial support while pursuing that objective, and the divorce takes place before the parties have accumulated significant distributable assets and before the husband's enhanced income potential has been realized.
The parties were married in October 1973. Both were then employed. The wife, Anita Hill, was a social worker and the husband, Robert Hill, was employed by a life insurance company. Their incomes were relatively modest. In September 1974 they moved from Long Island to Albany, New York. The husband continued to work in the insurance industry and the wife enrolled in medical school, from which she chose to withdraw in May 1975. They then moved to New Jersey where the husband entered dental school in June of that year. The wife was unemployed for about a year. In May 1976 she began to work again as an assistant scientist for a commercial laboratory and as a substitute teacher. They separated in October 1978 when the husband was in his last year of dental school. There were no children born of the marriage.
In the summer of 1979 the wife filed a divorce complaint against her husband and then moved to Boston and enrolled in the Boston University Dental School, where she was a second-year student at the time of trial. The husband at that time was completing a residency in oral surgery in Albany, earning an annual salary of $15,500. He expected to enter dental practice upon completion of his residency.
At the time of their separation the parties had accumulated modest personal property, which they divided between them, and some $4,000 of debts for unpaid household and living *619 expenses.[1] During their marriage, the wife apparently made the larger financial contribution. Although the husband apparently supported the wife during her one year of medical school, upon their move to New Jersey their roles were reversed. During the husband's first year of dental school the parties were supported by a combination of educational grants and loans obtained by the husband and a $10,000 inheritance received by the wife. Between the time she started to work in May 1976 and the time of the parties' separation in October 1978 she earned some $36,000, all of which she contributed to their joint living expenses. His educational expenses continued to be paid for by loans and grants, and at the time of trial he had accumulated about $28,000 in unpaid educational loans. His earnings during this period were less than $1,000. Prior to trial the wife had also received an additional $10,000 by way of settlement of a wrongful death action involving her mother. That sum had been consumed, partly for payment of the parties' joint debts and partly for the wife's post-separation expenses.
The wife's expenses as a dental student amount to approximately $22,000 annually. Her tuition is almost $12,000 a year and the balance represents her living costs. She is meeting these expenses by educational loans.
The primary issue at trial was the wife's claim for reimbursement of her contribution to the couple's support between May 1976 and October 1978 while the husband was in dental school. The trial judge found as a fact that the wife had contributed $28,000 to joint support during that period[2] and that the husband *620 had contributed $2,000.[3] He, therefore, concluded that her net support contribution had been $26,000. Reasoning that half of this sum had been expended for each, he awarded the wife $13,000, to be paid by the husband in three installments, $3,000 on December 31, 1981 and $5,000 on December 31, 1982 and 1983. The husband appeals.
The judgment herein refers to this award as "equitable distribution." The oral opinion, while not definitively articulating the legal basis for the award, speaks in terms of reimbursement to avoid unjust enrichment, the potential property status of professional training and what appears to be a notion of conditional interspousal gift.
For the reasons stated in Mahoney v. Mahoney, supra, we are satisfied that none of these theories justifies the award here. Nevertheless, we are satisfied that some award was appropriate, not on an equitable distribution, property theory or contract theory, but rather by way of "rehabilitative alimony."[4] As we noted in Mahoney, this is a singularly appropriate technique in a situation such as this where the wife, after the failure of the marriage, seeks to enhance her own income capacity by pursuing educational or professional objectives. The technique of a fixed total alimony award in lieu of an indefinitely continuing periodic alimony payment for the purpose of achieving income parity has been approved by the Supreme Court in Lepis v. Lepis, 83 N.J. 139, 155, n. 9 (1980). It clearly should have been employed here.
We point out that the amount of rehabilitative alimony, whether to be paid in a lump sum or periodically, is not fixed or *621 circumscribed by or necessarily equivalent to the wife's contribution to her husband's support during the marriage. It may be greater or less, and indeed may be available even where the wife has made no such contribution. The considerations to be taken into account in determining rehabilitative alimony are fundamentally no different than those in an ordinary alimony situation. They involve, in the context of the wife's plans and abilities and the parties' respective resources, including future earning capacity, an evaluation of what sums will be reasonably necessary for reasonable objectives and for how long, and what sums are and will probably be available. The wife here is incurring debt for her education at the rate of about $22,000 a year. The husband's education and professional training are now complete and his earning capacity will now begin to be realized even as he pays his educational debts. The parties will presumably one day enjoy relatively comparable income capacities. For now, however, she requires assistance which he is increasingly able to provide. The amount of that assistance and the manner of its payment must, however, be determined by the trial court in light of all of the relevant alimony factors, see Lepis v. Lepis, supra, 83 N.J. at 150, and upon specific findings of fact. We remand to the trial court for such findings on the evidence already before it and on such additional relevant evidence as it deems appropriate.
The provision of the judgment here appealed from, awarding equitable distribution to the wife in the amount of $13,000, is reversed, and we remand to the trial court for the fixing of rehabilitative alimony consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] The debts had been paid prior to trial by the wife out of the proceeds of the settlement of a negligence action. The judgment directed the husband to reimburse her for one-half of these payments and no appeal from that provision has been taken.
[2] The record does not support the discrepancy between the wife's testimony and the court's findings as to the amount of her contribution.
[3] The cost of the husband's schooling, borne by him as aforenoted, was not included in this calculation.
[4] The complaint here did demand alimony, which the judge denied without explanation.