182 N.J. Super. 598 (1982)
442 A.2d 1062
MELVIN M. MAHONEY, PLAINTIFF-APPELLANT,
v.
JUNE LEE MAHONEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 8, 1981.
Decided February 9, 1982.
*600 Before Judges MATTHEWS, PRESSLER and PETRELLA.
Charles J. Casale, Jr. argued the cause for appellant (Casale & Segal, attorneys).
Edward J. McCrossin, III, argued the cause for respondent (Schumann, Hession, Kennelly & Dorment, attorneys; Henry F. Wolff, III on the brief).
The opinion of the court was delivered by PRESSLER, J.A.D.
*601 This divorce action requires us to consider the financial consequences of a spouse's professional license or educational degree and the presumed enhanced earning capacity of that spouse attributable thereto. Two fundamental questions must be addressed. The first is whether either the license or degree itself or the consequent enhanced earning potential attributable thereto constitutes property subject to equitable distribution. If not, the second question is whether a spouse who has made a financial contribution to the other spouse's attainment of a license or degree is nevertheless, on any other legal or equitable basis, entitled on termination of the marriage to some other form of special monetary consideration on account of that contribution.
The parties here were married in Indiana in 1971. The husband, plaintiff Melvin Mahoney, was then a captain in the Air Force and had earned a degree in aeronautical engineering. The wife, defendant June Lee Mahoney, had a bachelor of science degree and was also employed. Both apparently contributed to their mutual support during the early years of the marriage. In the summer of 1975 the husband left military service and the parties moved to New Jersey. It was their mutual conclusion that the husband's prospects in aeronautical engineering were limited, and it was accordingly their agreement that their mutual interests would be best served if he pursued further education in order to obtain a master's degree in business administration. The husband enrolled in an M.B.A. program at the Wharton School in September 1975 and earned his M.B.A. degree in January, 1977, 16 months later. During this period the wife was employed as a medical technologist at an annual income of about $20,000.[1] The husband's total educational *602 expenses of about $6,500 were paid for by a combination of veteran's administration benefits and a lump sum payment of $1,000 he received from the Air Force, representing unused leave time. The parties were supported while the husband was at Wharton by the wife's earnings, supplemented by some $4,000 in savings accumulated by the parties jointly prior to the husband's enrollment at Wharton, and an additional $1,000 received by the husband by way of dividends on stock he had owned prior to the marriage and which were held for him by his mother.[2] It was the wife's testimony that during the 16-month period of the husband's M.B.A. study, she contributed about $24,000 to their support.
Early in 1977 the husband, after completing his degree, was employed by the Chase Manhattan Bank as a commercial lending officer at a salary roughly commensurate with his wife's. She continued working and had already begun a part-time graduate program at Rutgers University, paid for by her employer, which led to her attainment of a master's degree in microbiology in October 1979. Following the husband's employment by Chase Manhattan Bank, the parties remained together for about 20 months, each contributing equally to their joint household expenses. They separated in October 1978 and the husband sued for divorce by complaint filed in March 1979. The wife counterclaimed, and ultimately a dual divorce judgment was entered.
No children were born of the marriage, and by the time of trial in May 1980, the husband's annual income was $25,600 and the wife's was $21,000. No claim for alimony was made. The parties owned no real property and their modest accumulated personal property was divided between them by agreement. The only financial issue thus remaining at trial was the wife's entitlement to compensation for having supported the husband *603 in order to enable him to earn his M.B.A. degree and thereby to enhance his income potential. As she herself explained her claim,
I'm seeking 50 percent of the net total expenses for that time [the 16 months of the M.B.A. program], judging from the fact that I lived there too, so I figure I should pay 50 percent ... So total net expenses, $24,119.98, plus tuition, $30,896.45, I want one-half of that in terms of compensation, with no taxes, $15,500.
The trial judge reasoned that
A working spouse who contributes to the education of another spouse does so certainly with the expectation that there will be in the future some benefit derived from such a sacrifice. The court is convinced that the facts of this case and the interrelationship of the parties mandate some credit to the working spouse by the spouse who pursued and achieved an education during the marriage. To ignore the contributions of the sacrificing spouse would be to work an injustice, an unfair advantage to the spouse who has gained the education and degree without obligation. There would be an unjust enrichment of the educated spouse. [175 N.J. Super. at 446]
He then concluded that the education and degree obtained by the husband under the circumstances of this case constituted a property right, the acquisition of which required him to pay the wife "some reasonable sum ... on behalf of the maintenance of the household and the support of plaintiff during the educational period." The judge fixed $5,000 as such reasonable sum, payable to the wife in monthly installments of $100 each. The husband appeals on the ground that the award was without legal justification. The wife cross-appeals, claiming the amount awarded her was inadequate. We agree with the position taken by the husband.
We are constrained to make a preliminary observation. Despite the apparent "reimbursement" rationale of the provision of the judgment here appealed from, we are persuaded that we must nevertheless fully address the problem of the professional license and educational degree in the context of the spouses' respective financial rights attendant upon divorce. The essential character and nature of the license or degree in this context were clearly brought into focus by the trial court's opinion and *604 the authorities therein relied on.[3] Our analysis of the out-of-state judicial literature convinces us, moreover, of the necessity to draw clear distinctions between the question of the license or degree as constituting a distributable marital asset and the question of the availability of some other equitable remedy to the spouse who has financially contributed to the other spouse's attainment of the license or degree. Clearly, if the license or degree or the consequently enhanced income potential were to constitute equitably distributable property, the general rules applicable to equitable distribution would control and there would be no need to explore the availability of reimbursement or any other equitable remedy. It is thus only if the license or degree is not property for purposes of equitable distribution that consideration of alternative remedies becomes relevant. We make this observation because the out-of-state cases upon which the trial judge relied have afforded an essentially equitable rather than a property-division remedy to the contributing spouse, based, however, on the predicate that the license or degree is property. There is an analytical inconsistency inherent in such an approach, which in our view serves, at least in respect of this State's jurisprudence, to exacerbate rather than to clarify the conceptual difficulties of the problem.
In considering the question of whether the license or degree or its enhanced income potential constitutes distributable property, we are aware of the generally expansive construction *605 of the term "property" as used by the equitable distribution statute, N.J.S.A. 2A:34-23. Nevertheless, our Supreme Court has excluded earning ability from the definitional scope of distributable property. Thus, in Stern v. Stern, 66 N.J. 340, 345 (1975), the court held that "a person's earning capacity, even where its development has been aided and enhanced by the other spouse, as is here the case, should not be recognized as a separate, particular item of property within the meaning of N.J.S.A. 2A:34-23." Obviously, if the enhanced earning capacity itself is not distributable property, then neither is the license or degree, which is merely the memorialization of the attainment of the skill, qualification and educational background which is the prerequisite of the enhanced earning capacity and on which it is predicated.
We are, of course, bound by the holding in Stern. Beyond that, we are not only convinced of its soundness but note as well that it has come to represent the majority view in this country. Thus, the Colorado Supreme Court, in In re Marriage of Graham, 194 Colo. 429, 574 P.2d 75, 77 (1978), rejected the claim that an M.B.A. degree constitutes distributable property. Citing Stern, it reasoned that
An educational degree, such as an M.B.A., is simply not encompassed even by the broad views of the concept of "property." It does not have an exchange value or any objective transferable value on an open market. It is personal to the holder. It terminates on death of the holder and is not inheritable. It cannot be assigned, sold, transferred, conveyed, or pledged. An advanced degree is a cumulative product of many years of previous education, combined with diligence and hard work. It may not be acquired by the mere expenditure of money. It is simply an intellectual achievement that may potentially assist in the future acquisition of property. In our view, it has none of the attributes of property in the usual sense of that term.
........
Our interpretation is in accord with cases in other jurisdictions. We have been unable to find any decision, even in community property states, which appears to have held that an education of one spouse is marital property to be divided on dissolution.
And see, in accord, Wisner v. Wisner, 129 Ariz. 233, 631 P.2d 115 (Ct.App. 1981) (medical license); DeWitt v. DeWitt, 98 Wis.2d 44, *606 296 N.W.2d 761 (Ct.App. 1980) (law degree); Frausto v. Frausto, 611 S.W.2d 656 (Tex.Civ.App. 1981) (medical license); In re Marriage of Goldstein, 97 Ill. App.3d 1023, 53 Ill.Dec. 397, 423 N.E.2d 1201 (App.Ct. 1981) (medical license); Leveck v. Leveck, 614 S.W.2d 710 (Ky.App. 1981) (medical license); Wilcox v. Wilcox, 173 Ind. App. 661, 365 N.E.2d 792 (Ct.App. 1977) (Ph.D. degree); In re Marriage of McManama, 399 N.E.2d 371 (Sup.Ct.Ind. 1980) (law degree); Todd v. Todd, 272 Cal. App.2d 786, 78 Cal. Rptr. 131 (D.Ct.App. 1969) (law degree); In re Marriage of Aufmuth, 89 Cal. App.3d 446, 152 Cal. Rptr. 668 (D.Ct.App. 1979) (law degree); Muckleroy v. Muckleroy, 84 N.M. 14, 498 P.2d 1357 (Sup.Ct. 1972) (medical license). See, also, Church v. Church, 96 N.M. 388, 630 P.2d 1243 (Ct.App. 1981); Nastrom v. Nastrom, 262 N.W.2d 487 (N.D.Sup.Ct. 1978). But see, contra, Daniels v. Daniels, 20 Ohio Op.2d 458, 185 N.E.2d 773 (Ct.App. 1961) (medical license); Hubbard v. Hubbard, 603 P.2d 747 (Okl.Sup.Ct. 1979) (medical license); DeLa Rosa v. DeLa Rosa, 309 N.W.2d 755 (Minn.Sup. Ct. 1981) (medical license); In re Marriage of Horstmann, 263 N.W.2d 885 (Iowa Sup.Ct. 1978) (law degree); Inman v. Inman, 578 S.W.2d 266 (Ky.App. 1979) (dental license); Sullivan v. Sullivan, 82 Daily Journal D.A.R. 157 (Cal.D.Ct.App. 1982) (not yet officially reported) (medical license).
The question of the character of enhanced earning capacity in the context of the license or degree is one which has only lately begun to engage the attention of the courts. Typically, the question is posed in the situation in which the wife[4] works to support both herself and her husband in order to enable him to pursue his educational objectives. Her expectation is that she will benefit in the future from the increased income which the achievement of his objectives will afford him. The marriage then terminates before there is time for that expectation to be realized and before the couple has had the opportunity to *607 accumulate a marital estate of any substance. The reason for the focusing of the issue on this factual pattern is obvious. Where the marriage had endured beyond the career-threshold point and the husband's enhanced income potential has become a reality, the wife's original expectations are also thereby realized, and there is typically, as well, both a marital estate and an income available for her to share in after the divorce. Thus, as the court further observed in Stern, supra, "potential earning capacity is doubtless a factor to be considered by a trial judge in determining what distribution will be `equitable' and it is even more obviously relevant upon the issue of alimony. But it should not be deemed property as such within the meaning of the statute." Other states which have denied distributable-property status to the license or degree have also noted that a wife's contribution to its achievement is ordinarily fully compensable, as it were, by way of division of assets and an award of alimony. See, e.g., DeWitt v. DeWitt, Wisner v. Wisner, and In re Marriage of Graham, all supra.
It is consequently only in the career-threshold, no-asset situation that courts have felt impelled to devise a remedy for the wife who has contributed to the husband's educational and professional achievement lest she leave the marriage empty-handed.[5] Typically, that remedy is based on the theoretical predicate that in that situation, but in that situation only, the license, degree or enhanced income capacity is property. In what we regard as doctrinal chaos, the property classification apparently ceases to apply as soon as marital assets have been accumulated. Illustrative are the two Kentucky cases cited supra. In Inman v. Inman, supra, 578 S.W.2d at 269, the court frankly asserted that "we think it reasonable and sometimes necessary for courts to have the power to find a property interest for the holder's spouse in a professional degree." The *608 later case of Leveck v. Leveck, unlike the factual pattern in Inman, involved a divorce action not commenced until some time after the husband-doctor had begun practicing medicine, with the consequent result that some distributable assets had been accumulated and the husband was in a financial position to provide substantial maintenance for which the wife qualified. The court there refused to consider the medical license as marital property despite the wife's support of the husband during his schooling. In rejecting Mrs. Leveck's contention that Inman had established in Kentucky the principle that a professional license was a marital asset, the court explained that
In Inman, the only way by which equity could have been achieved was by the classification of the license as marital property. There was no marital property other than the license and Mrs. Inman was not eligible for maintenance. Mrs. Inman would have been left with nothing had the license not been considered marital property. [614 S.W.2d at 712]
It is our view that the concept of property cannot, as a matter of rationality or common sense, be defined by a purely circumstantial criterion. If a license or degree or its enhanced earning potential is not property five or ten or twenty years after graduation, it cannot be property on graduation day either. If it is not property if achieved exclusively by the efforts, financial and otherwise, of the graduate or licensee himself, it does not become property simply because his spouse has contributed to his support during his schooling or training. The simple fact remains that the marital property label does not suit at all and, therefore, cannot be made to suit some of the time.
The incongruity of the property labeling of the license or degree is further evident in the manner by which that "property" is customarily evaluated in divorce actions. If it has a quantifiable monetary value, that value, logically, can only be expressed in terms of the present capitalized value of the anticipated enhanced income which will be earned throughout working life and which is attributable to the education and training. So expressed, it becomes obvious that what has been thus classified as property is in reality future earning capacity of a spouse, which Stern has held not to constitute a distributable *609 mutual asset. Even if it were, it is clear that the degree of speculation involved in identifying the factors of an equation which might produce such a present value is daunting. As noted by the Wisconsin court in DeWitt v. DeWitt, supra:
Whether a professional education is and will be of future value to its recipient is a matter resting on factors which are at best difficult to anticipate or measure. A person qualified by education for a given profession may choose not to practice it, may fail at it, or may practice in a specialty, location or manner which generates less than the average income enjoyed by fellow professionals. The potential worth of the education may never be realized for these or many other reasons. An award based upon the prediction of the degree holder's success at the chosen field may bear no relationship to the reality he or she faces after the divorce. Unlike an award of alimony, which can be adjusted after divorce to reflect unanticipated changes in the parties' circumstances, a property division may not. The potential for inequity to the failed professional or one who changes careers is at once apparent; his or her spouse will have been awarded a share of something which never existed in any real sense. [296 N.W.2d at 768]
It is furthermore apparent that since it is only the enhanced earning potential attributable to the degree which would in any case be subject to evaluation and "distribution," the quantification process would require that total capitalized earnings in the "enhanced" career be reduced by the capitalized income the spouse should be assumed to have been able to earn if otherwise employed. In our view, identification and income projection of such a possible alternative employment is ordinarily nothing but speculation, particularly when it is fair to assume that a person with the ability and motivation to complete professional training or higher education would probably utilize those attributes in concomitantly productive alternative endeavors.
Because of the perceived difficulties in attempting fairly to determine the monetary value of the degree or license or to quantify its enhanced earning potential, those courts which have opted for a property classification have typically not even attempted a capitalization-of-income method but have rather elected simply to reimburse the wife for her financial contribution on the theory, apparently, that the value of the degree or *610 license is equivalent to the dollars spent in obtaining it.[6] While this cost approach has the advantage of mathematical workability, it has little to do with any real value of the degree and fails to consider at all the nonfinancial efforts made by the degree holder in completing his course of study. See DeWitt, supra, 296 N.W.2d at 767. Thus, the cost approach is plainly not conceptually predicated on a property theory at all but rather represents a general notion of how to do equity in this one special situation.
For the foregoing reasons we hold that neither a professional license, a degree, nor the enhanced income capacity fairly attributable thereto constitutes property available for equitable distribution. The award which was made to the wife here is thus not warranted as equitable distribution.
The next question, then, is whether in the career-threshold, no-asset situation, the spouse who has financially contributed to the other spouse's obtaining of the degree or license is entitled to recompense on some other nonproperty theory. We are satisfied that our equity jurisprudence is sufficiently comprehensive and responsive so that, without distortion of legal principle, a remedy can be rationally afforded to a spouse in that situation, if the situation is indeed deemed to require or justify a special remedy. It is that issue we now address.
*611 The leitmotif of the cases which have accorded recompense to the wife, irrespective of the various proferred legal justifications therefor, is that it is unfair for her to have sacrificed during the lean years of the husband's education and then to be denied the rewards of his anticipated future prosperity. The perceived inequity was described in Inman v. Inman, supra, thus:
To flatly refuse to find any sort of protected property interest would work the grossest inequity in certain instances. The apparently rather common situation in which one spouse puts the other through graduate or professional school, followed closely by a dissolution upon the completion of the schooling, allows perhaps the clearest exposition of the problems involved. In those instances it is usually the case that little or no marital property has been accumulated. In such instances there is generally no entitlement to maintenance as each spouse is self-supporting. Thus the spouse who has devoted much of the product of several years of labor to an "investment" in future family prosperity is barred from any return on his or her investment. The other spouse has received a windfall of contribution to his or her increased earning capacity. Had he not had a spouse's support, he might well have been compelled to prolong or delay his professional education while earning enough to support himself and meet education costs, or to go deeply into debt. [578 S.W.2d at 268]
Other courts have echoed these sentiments. See Hubbard v. Hubbard, supra, 603 P.2d at 751; DeLa Rosa v. DeLa Rosa, supra, 309 N.W.2d at 758. And see Erickson, "Spousal Support Toward the Realization of Educational Goals: How the Law Can Ensure Reciprocity," 1978 Wis.L.Rev. 947; Note, "Family Law: Ought a Professional Degree Be Divisible as Property Upon Divorce," 22 Wm. & Mary L.Rev. 517 (1981).[7]
*612 We take, however, a fundamentally different view based on our perception of the essential nature of the marital relationship. Marriage is a joint venture which, while it has a considerable economic dimension, is not merely an economic undertaking. The law imposes upon the spouses a mutual and reciprocal obligation of financial support. See, e.g., Mendell v. Mendell, 162 N.J. Super. 469, 475 (App.Div. 1978). The spouses, however, impose upon themselves by mutual consent the manner in which they will fulfill not only that obligation but also all of the nonfinancial services to each other and the nonfinancial supports of each other which together constitute the essence of their relationship and which make up the character and nature of a shared life with mutual aims and goals. While the marriage endures and the spouses define for themselves their respective contributions, financial and otherwise, to each other and to the marriage, they do not, nor is there any reason to, place relative values on the worth of their respective contributions. They contribute as the dictates of their relationship, their mutual interests and their own self-determination require, and they share the benefits, financial and otherwise, in the same manner. They do not nor do they expect to pay each other for their respective contributions in any commercial sense. Rather, they work together, in both income and nonincome producing ways, in their joint, mutual and individual interests.
The termination of the marriage represents, if nothing else, the disappointment of expectations, financial and nonfinancial, which were hoped to be achieved by and during the continuation of the relationship. It does not, however, in our view, represent a commercial investment loss. Recompense for the disappointed expectations resulting from the failure of the marital entity to survive cannot, therefore, be made to the spouses *613 on a strictly commercial basis which, after the fact, seeks to assign monetary values to the contributions consensually made by each of the spouses during the marriage. Appropriate recompense, as it were, is afforded by an award of alimony where the parties' respective income situations warrant and by equitable distribution of the financial assets accumulated during the marriage. Indeed, the whole point of equitable distribution is based on the recognition of the value and worth of the nonfinancial contributions which spouses make which ultimately entitle each to a share of those assets. See Rothman v. Rothman, 65 N.J. 219, 229 (1974).
The question, then, is whether there should be a different rule and a different basic jurisprudence which would place on a strictly commercial basis the financial contributions made by one spouse during the marriage to the other spouse's education and training in order that that contribution alone be commercially recompensed. Unless the spouses themselves have otherwise agreed, we think not, even if the marriage terminates before the expected "fruits" of the education and training are borne.
The claim of special recompense is based on the notion that there are unique considerations involved when one spouse's financial contribution is made in order to enable the other to obtain a professional degree or license. In our view, that claim represents a kind of elitism which inappropriately depreciates the value of all the other types of contributions made to each other by other spouses pursuing different life styles and responding in their individual ways to their life experiences. Clearly, a wife who supports her husband while he pursues an educational or professional objective (or the husband who supports the wife, if that is the case) is at the same time receiving nonfinancial contributions from him. The supporting wife is, moreover, not sacrificing for the exclusive benefit of the husband. Her efforts are for them both, as are his, in following a *614 self-determined, consensual and mutual plan they have agreed upon for their joint benefit. If the plan fails by reason of the termination of the marriage, we do not regard the supporting spouse's consequent loss of expectations by itself as any more compensable or demanding of solicitude than the loss of expectations of any other spouse who, in the hope and anticipation of the endurance of the relationship and its commitments, has invested a portion of his or her life, youth, energy and labor in a failed marriage.
Ultimately, we are in accord with the rationale of the Arizona court which, in Wisner v. Wisner, supra, rejected a wife's unjust enrichment claim on this reasoning:
... Marriage is by nature not an arm's length transaction between two parties. If two individuals wish to define their marriage as such, they may of course do so and memorialize it in a contract that spells out the specific rights and duties of each. However, in the absence of such an agreement, we believe it is improper for a court to treat a marriage as an arm's length transaction by allowing a spouse to come into court after the fact and make legal arguments regarding unjust enrichment by reason of the other receiving further education during coverture. In the absence of a specific agreement, such legal arguments simply do not fit the context of a marital relationship. In each marriage, for example, the couple decides on a certain division of labor, and while there is a value to what each spouse is doing, whether it be labor for monetary compensation or homemaking, that value is consumed by the community in the on-going relationship and forms no basis for a claim of unjust enrichment upon dissolution.
We believe if the decision is made that one or both spouses shall receive further education, courts should assume, in the absence of contrary proof, that the decision was mutual and took into account what sacrifices the community needed to make in the furtherance of that decision. In this case, wife's testimony clearly illustrated that the decision as to husband's further training was mutual, consensual and made with full understanding of the sacrifices that necessarily accompanied the decision. There is nothing to support a claim of unjust enrichment. We therefore hold that the items in question are not property, and that the court did not abuse its discretion in denying further compensation to the wife. [631 P.2d at 123]
For these reasons, we conclude that the wife here is not entitled to reimbursement for the contributions she made to her husband's support during the 16 months in which he earned his *615 M.B.A. degree. Her own testimony makes clear that during the eight or nine years of their marriage the spouses pursued joint and mutual plans to serve their joint and mutual interests. As a result, each has left the marriage with comparable earning capacity and comparable educational achievements. This result was accomplished by what each did for the other as well as by what each did for himself or herself. The relative values of their individual contributions during the marriage by which this result was accomplished cannot and ought not be retrospectively assessed and set off against each other. There is, moreover, no inequity, apparent or real, in our refusal to do so.
Where the spouses' respective earning capacity or educational achievements are not comparable at the time of the divorce, there may well be equitable considerations appropriately invoking application of conventional doctrine. Thus, for example, where a wife has deferred her own further education or professional training by reason of the constraints of the marriage, whether or not one of those constraints has been the provision of support to her husband during his schooling, and if it is her post-divorce plan to enhance her own income capacity by pursuing educational objectives, an award of what has come to be known as rehabilitative alimony to enable her to do so would be appropriate, consistent with her husband's immediate and projected financial ability. See Lepis v. Lepis, 83 N.J. 139, 155, n. 9 (1980). And see the companion case of Hill v. Hill, 182 N.J. Super. 616, decided this day. Where that is not her plan or intention, alimony in its more conventional forms may be available to her, again dependent on the spouses' respective financial situations. Clearly, no such special considerations are here present.
The provision of the judgment awarding the defendant compensation for her support contribution to plaintiff's education is reversed.
NOTES
[1] There was some divergent testimony by the parties regarding the relevant financial facts of the marriage and complete factual findings were not made by the trial court. The figures herein referred to are, therefore, for the most part, approximate and take into account the testimony of both parties.
[2] It was the husband's testimony that the joint savings exceeded $5,000 and that the payment for unused leave time was $2,200. The wife, on the other hand, did not recall receipt of the stock dividends.
[3] We are further impelled to do so by reason of the unpublished opinion of the Chancery Division in Lynn v. Lynn, decided on December 5, 1980, under Docket No. M-9842-77. Although we ordinarily would not address ourselves to an unpublished opinion, see R. 1:36-3, it appears that the substance of Lynn v. Lynn has been widely unofficially reported. See 49 U.S.L.W. 2402 (1980); Family Law Reporter, Vol. 7, No. 9 (1981). The case has consequently been cited in reported decisions of our sister states as representative and expository of the law of New Jersey on this subject. See Wisner v. Wisner, 129 Ariz. 333, 631 P.2d 115 (Ct.App. 1981); Sullivan v. Sullivan, 82 Daily Journal D.A.R. 157 (Cal.Ct.App. 1982) (not yet officially reported). Our conclusions here, however, do not accord with the trial court opinion in Lynn, and it is our view that our disagreement with Lynn requires publication.
[4] As a matter of literary convenience and because that has been the actual situation in all reported cases, the contributing spouse is referred to herein as the wife. Obviously, the roles could be reversed.
[5] This is particularly so in those jurisdictions in which alimony is not generally available. See, e.g., Inman v. Inman and DeLa Rosa v. DeLa Rosa, both supra.
[6] The reimbursement approach is typically a formula with these factors: the wife's total financial contribution to the couple's support and the school expenses of the husband is reduced by so much thereof as represents the cost of her individual support and further reduced by whatever financial contribution the husband made to the couple's support and his schooling expenses. The balance remaining is regarded as her recompensable and reimbursable contribution. See DeLa Rosa v. DeLa Rosa, In re Marriage of Horstmann, Hubbard v. Hubbard and Inman v. Inman, all cited supra. The only published decision of which we are aware which attempts the capitalized income approach to valuation is Lynn v. Lynn. See supra, n. 3. In Lynn the trial judge reduced the present value of the defendant's assumed earnings as a doctor by that amount which was shown on actuarial tables to represent the median income of a male four-year college graduate.
[7] We note that Indiana, in 1979, adopted legislation, Ind. Code § 31-1-11.5-11(b), providing that

When the court finds there is little or no marital property, it may award either spouse a money judgment not limited to the existing property. However, this award may be made only for the financial contribution of one [1] spouse toward tuition, books and laboratory fees for the higher education of the other spouse.
See In re Marriage of McManama, supra, declining to accord retrospective application to this provision, which is apparently limited only to direct educational expenses and not to support provided by one spouse to the other while pursuing the education. For the reasons hereafter expressed, we have serious reservations about the validity and wisdom of this exceptional classification.