## Pratt v. Pratt

*Richard P. Nuffert*, for plaintiff.
*Joseph P. Caranci, Jr.*, for defendant.

HUMMER, *J.*, July 16, 1982—Before the court is the motion for summary judgment filed in the above-captioned divorce action by plaintiff, Robert S. Pratt, as to the claims for equitable distribution of marital property, alimony and counsel fees raised by defendant, Suzanne S. Pratt. These claims have been bifurcated from the issue of the divorce itself, which divorce was granted on June 4, 1982 on the ground

of three-year separation. The parties have submitted affidavits and counter-affidavits of facts as well as briefs, and oral argument was heard by the court on April 2, 1982.

The parties were married on December 29, 1973. Plaintiff had begun medical school in September, 1973 at Wake Forest University, Winston-Salem, North Carolina, and the parties' marital residence was located in North Carolina. Defendant worked as a medical technologist throughout plaintiff's four years of medical school, excepting the leave necessary to have the parties' first child on November 13, 1974. Defendant spent her entire income for the support of plaintiff and the family. Plaintiff graduated from medical school in the spring of 1977. Plaintiff began his internship at Harrisburg Hospital, Harrisburg, Pa. The parties' second child was born on March 19, 1978. The parties separated, with plaintiff leaving the marital home, on March 23, 1978. On January 15, 1979, the parties entered into a written separation agreement. Both parties were represented and advised by counsel as to the separation agreement, which was prepared by plaintiff's counsel. Neither counsel considered any possible impact that the enactment of a new divorce law in Pennsylvania would have on the agreement.

Plaintiff's motion for summary judgment is based on the contention that the separation agreement was intended by the parties as a full and final settlement of their property rights precluding a subsequent claim for distribution of marital property. Plaintiff also argues that the only item of marital property for which distribution is sought, plaintiff's medical degree, is not property properly subject to distribution under Pennsylvania law. Defendant's position is that the separation agreement was a

support agreement only, and not a final and complete settlement of all marital rights.

Section 103 of the Divorce Code, Act of April 2, 1980, P.L. 63, 23 P.S. § 101 et seq., provides that prior marital agreements shall not be affected by the Act. However, absent caselaw in Pennsylvania as to the foreclosure of equitable distribution by a prior separation agreement, the decisions of the courts of our sister states must be reviewed as to application of this section. The key cases, as noted by the parties' briefs, are: Smith v. Smith, 72 N.J. 350, 371 A. 2d 1 (1977); Carlsen v. Carlsen, 72 N.J. 357, 371 A. 2d 8 (1977); Gedraitis v. Gedraitis, 439 N.Y.S. 2d 978 (1981); and Boss v. Boss, 436 N.Y.S. 2d 167 (1981).

In Smith, the New Jersey Supreme Court stated that separation agreements can be classified into two types of agreements when waiver of an equitable distribution claim is at issue, namely a support or property settlement agreement. The court indicated that a comprehensive property settlement agreement which waives any further distribution of marital property must amount to the substantial equivalent of equitable distribution and will be subject to review by the court as to the fairness of its provisions. Support agreements on the other hand provide for the necessary living expenses for the dependent spouse and children and may divide personal property utilized by the parties in their day-to-day lives, as well as jointly owned real property.

In Smith, the court found that the agreement in question, executed prior to the effective date of the New Jersey equitable distribution statute, was a support agreement only, and did not foreclose wife's claims for property distribution even though the release clause of the agreement purported to re-

lease the parties from present or future rights arising from the marriage. The court discounted the ability of a party to release a claim which she could not have reasonably anticipated as arising. The court also gave strong support to the legislative intent in affording the dependent spouse in a marital dissolution the ability to obtain economic justice through equitable distribution. Carlsen, supra, is in accord with Smith and in a later decision, DiGiacomo v. DiGiacomo, _____ N.J. _____, 402 A. 2d 922 (1979), the court ruled that a prior property settlement agreement may partially foreclose equitable distribution as to the property included in the agreement.

The New York courts in Gedraitis and Boss are apparently in agreement with the New Jersey court in holding that if a prior separation agreement is only a partial settlement of property rights, the remaining property would be subject to equitable distribution. However, the test is applied under the differing public policy consideration that the court will, whenever possible, honor the fairly negotiated agreements of parties to a marital dissolution. Thus while the New Jersey court views the separation agreement in the light of the legislative intent to insure an economically just marital dissolution, the New York courts view the separation agreement in the light of the right of parties to contract as to the division of their marital assets and to have those agreements enforced.

Regardless of the policy considerations applied in Pennsylvania, this court must initially consider the Separation Agreement in question to determine whether the document itself provides a clear indication of the parties' intent. In Litwack v. Litwack, 289 Pa. Superior Ct. 405, 433 A. 2d 514 (1981) the Pennsylvania Superior Court stated:

"In construing a separation agreement, a court must adopt that construction which gives effect to the parties' reasonable and probable intent, in view of the surrounding circumstances and purposes of the contract . . . In a written contract the intent of the parties is the writing itself, and when the words are clear and unambiguous, the intent is to be determined only from the express language of the agreement . . . when the terms of a written contract are clear, this court will not re-write it or give it a construction in conflict with the excepted and plain language used. . . ."

The agreement in this case before the court is titled, "Separation Agreement" and contains several preliminary clauses including the statement, "Husband and Wife desire to settle and determine their rights and obligations and the support and maintenance of Wife and children by the Husband." The key operative paragraphs of the agreement are paragraph five, "Mutual Release," and paragraph six, "Division of Personal Property." Paragraph five releases each party from any claims or causes of action which either party "ever had or now has against the other." Obviously this release clause makes no attempt to foreclose claims which may arise in the future, a standard precaution in most release clauses. Although the effectiveness of such a release of future claims is questionable, particularly as to claims for equitable distribution of marital property and alimony, which claims were not within the parties' contemplation at the time the agreement was executed, Restifo v. McDonald, 426 Pa. 5 _____ A. 2d _____, (1967) and Smith, supra, the absence of that boiler plate language is a significant indication of the parties' intent.

Paragraph six provides for the division of all the personal property used by the parties during the years of common residence including, household furniture, furnishings and personal effects. The affidavits submitted by the parties indicate that all of the property owned by the parties as of January 15, 1979 was divided by paragaph six of the separation agreement. There were no transfers of real property or of individually owned personal property because no such property existed.

This court is convinced that the legislature of our state desired that the economic benefits provided by the Divorce Code Act of 1980 should be available to as broad a range of individuals and cover as broad a range of property as possible within the constraints of due process. The appellate courts of Pennsylvania are in agreement with this belief as evidenced by the Superior Court's holding in Gordon v. Gordon, 293 Pa. Superior Ct. 491, 439 A. 2d 683 (1981), requiring that applications to proceed under the new Divorce Code be granted absent a finding that the objectives of the Code will not be advanced; and the Supreme Court's decision in Bachetta v. Bachetta, _____ Pa. _____, 445 A. 2d 1194 (1982), upholding the retroactive application of the Divorce Code's provisions concerning distribution of marital property.

Accordingly the court will strictly construe agreements which purport to waive the parties' rights to the distribution of marital property and to alimony under the Divorce Code. This approach must be applied to any such agreement whether entered into prior to July 1, 1980 or after the effective date of the Divorce Code. See Kutzer v. Kutzer, Montgomery Co. No. 79-396 (Feb. 26, 1982). Reviewing the present agreement there was no explicit waiver of the parties' rights under the Divorce Code of

1980 as such rights were unknown to the parties. In addition the "general waiver clause" in the agreement contains no provision for the release of future rights which might accrue to the parties. Thus the court concludes that the present separation agreement does not constitute a complete settlement of the parties' marital rights and does not bar the claims for alimony and distribution of marital property filed by defendant, Suzanne S. Pratt. This conclusion is reached without fear that sec. 103 of the Divorce Code has been abridged or that the common law right of parties to execute and enforce their own agreements has not been given due consideration.

Having found that defendant's claims are not barred by the prior agreement, the question of the treatment to be accorded plaintiff's medical degree must now be considered. The basic fact situation, as disclosed by defendant's affidavit in opposition to plaintiff's motion for summary judgment, indicates that the parties were married in December of 1973, plaintiff's first year in medical school, and separated in March of 1978, his first year as an intern. Also during plaintiff's four years of medical school defendant was employed as a medical technologist contributing her entire income to the support of the family. The parties' two children were born in November of 1974 and March of 1978. Thus the court is confronted with the difficult "career threshold" situation in which one spouse obtained a professional degree which was substantially financed through the contributions of the other spouse, and the parties separated prior to their receivng any of the benefits normally resulting from a professional degree.

Although Pennsylvania appellate courts have not yet considered this question, the courts of most other

states with equitable distribution statutes have confronted the issue, with differing results. Two general approaches have been adopted by the majority of those state's courts. The first is exemplified by the New Jersey Superior Court Appellate Division's decision in Mahoney v. Mahoney, N.J. Superior Ct. A.D., 442 A. 2d 1062 (1982), which held that a professional license or educational degree and the presumed enhanced earning capacity attributable thereof are not recognizable as separate property for equitable distribution purposes regardless of whether the non-degreed spouse had made a financial contribution to the attainment of the degree. See also Goldstein v. Goldstein, 97 Ill. App. 3d 1023, 423 N.E. 2d 1201 (1981); In Re Marriage of Graham, 194 Col. 429, 574 P. 2d 75 (1978); Lesman v. Lesman, 442 N.Y. 2d 955 Superior Ct. Erie Cty. (1981); and the cases cited in Mahoney, at 1066.

The second approach is best exemplified by the Wisconsin Supreme Court's decision in Lundberg v. Lundberg, April 27, 1982, 8 FLR 2381, which found that compensation for a person who supports his or her spouse while the spouse is in school can be achieved through both property division and maintenance payments. Thus the court was able to cure the no asset problem in "career threshold" situations by permitting compensation of the non-degreed spouse through maintenance payments. See also In Re Marriage of Horstmann, 263 N.W. 2d 885 (Iowa Sup. Ct. 1978); DeLaRosa v. DeLaRosa, 309 N.W. 2d 755 (Minn. Sup. Ct. 1981); Moss v. Moss, Kentucky Court of Appeals, March 12, 1982, and cases cited in Mahoney, at 1067.

Under either approach mentioned above the professional degree or license is not treated as marital property subject to valuation and distribution according to the present value of the future increased

earning power provided by the degree or license. Such an approach clearly would result in unwarranted speculation and the application of unfair assumptions concerning the degreed spouse's future employment. Accordingly the court will reject any proposed treatment of the instant medical degree as marital property subject to valuation and equitable distribution based on the future income of Dr. Pratt.

The court must further consider the extent to which defendant's contributions to the professional education of Dr. Pratt should be reflected in an alimony award in favor of defendant. In Mahoney, the court rejected any theory of compensation for the contributions of the non-degreed spouse and found that an award would only be appropriate based on the need for rehabilitative alimony. See Hill v. Hill, _____ N.J. Superior Ct._____, 442 A. 2d 1072 (1982). The court's reasoning in Mahoney is best summarized by the following quotation from the opinion:

"Clearly, a wife who supports her husband while he pursues an educational or professional objective (or the husband who supports the wife, if that is the case) is at the same time receiving nonfinancial contributions from him. The supporting wife is, moreover, not sacrificing for the exclusive benefit of the husband. Her efforts are for them both, as are his, in following a self-determined, consensual and mutual plan they have agreed upon for their joint benefit. If the plan fails by reason of the termination of the marriage, we do not regard the supporting spouse's consequent loss of expectations by itself as any more compensable or demanding of solicitude than the loss of expectations of any other spouse who, in the hope and anticipation of the endurance

of the relationship and its commitments, has invested a portion of his or her life, youth, energy and labor in a failed marriage."

Thus the court was not convinced that the "career threshold" situation was so inequitable to the non-degreed spouse as to require the fashioning of the special remedy of compensation through maintenance payments.

This court has a different view of the equities involved in the "career threshold" situation and as to the requirement for a special remedy. The contributions by a spouse for the professional education of his or her mate are unique both in the extent of the sacrifice and the fact that the present benefits of the education accrue exclusively to one spouse. Most other contributions by a spouse to the marital partnership confer a present benefit to both spouses and to the marriage as a whole. This court can perceive no present benefit to the contributing spouse who finances the education of his or her mate. Only after the degree and/or license has been obtained and employed for the financial benefit of the family will the original sacrifice be rewarded. While the parties' contributions during the educational period are mutual, they are far from being equal.

Accordingly this court would find that only through the award of compensatory alimony above that required for the rehabilitative needs of the non-degreed spouse can a fundamentally fair and equitable result be achieved. See Lundberg v. Lundberg, supra. This decision is not based on the notion that the contributions constitute a commercial transaction, but is an attempt to do equity based on the contributions made by the parties during the marriage and their needs upon dissolution of that marriage. The ultimate goal being the mitigation of the harm,

both emotional and financial, caused by the marital breakdown.

This ruling is entirely consistent with the Divorce Code Act of 1980. Section 501(b) indicates that the factors listed thereunder are to be considered in determining whether alimony is necessary, in what amount, and for how long. Among the factors listed under subsection (b) is "(6) The contribution by one party to the education, training or increased earning power of the other party." Thus an award of compensatory alimony does not exceed the court's authority under the Divorce Code, particularly in light of the necessity of such an award to insure an equitable result. See Kutzer, supra.

As to the establishment of general guidelines for the determination of the account of compensation to be accorded the non-degreed spouse, it is apparent that full compensation be awarded for contributions applied to the direct educational expenses of the other spouse, i.e. tuition, books, etc. However, contributions for living expenses present a much more difficult question. In DeLaRosa v. DeLaRosa, supra, the Supreme Court of Minnesota remanded that case to the trial court for the reassessment of the lower court's award of compensatory alimony; the Supreme Court ruled that the restitution should be limited to the contributions for direct educational costs plus the amount expended by the nondegreed spouse for her husband's living expenses during his years in school. Certainly this approach has much merit as contributions for living expenses should not be compensated in full. Accordingly the court would approve this means of arriving at a figure for compensation, but does not preclude the application of other appropriate methods of valuing the contribution.

As a final point, any award of compensatory ali-

mony should be paid over as short a period as possible without causing undue hardship to the paying party. This is desirable due to the statutory provision of the Divorce Code which dictates that alimony payments terminate upon the remarriage or cohabitation of the party receiving the maintenance.

## ORDER

And now, July 16, 1982, the motion for summary judgment filed by plaintiff, Robert S. Pratt, is denied in part and sustained in part. Defendant, Suzanne S. Pratt's claim for equitable distribution of marital property is dismissed. Defendant's claims for alimony and counsel fees shall be assigned to a special master for hearing and recommendation consistent with this opinion.